Citation Nr: 1101581 
Decision Date: 01/13/11 Archive Date: 01/20/11

DOCKET NO. 97-07 964 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, 
Missouri


THE ISSUES

1. Entitlement to service connection for hepatitis C.

2. Entitlement to an effective date prior to March 20, 2007 for 
the grant of service connection for prostate cancer.


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, 
Attorney at Law


WITNESS AT HEARING ON APPEAL

Appellant




ATTORNEY FOR THE BOARD

C. M. Powell, Counsel


INTRODUCTION

The Veteran had active service from February 1970 to August 1971.

These matters come to the Board of Veterans' Appeals (Board) on 
appeal from two rating decisions of the St. Louis, Missouri, 
Regional Office (RO) of the Department of Veterans Affairs (VA). 
In an April 2005 rating decision, the RO denied service 
connection for hepatitis C. The Veteran perfected an appeal as 
to the RO's decision and in August 2008, the Board remanded the 
issue for further development. The requested development has 
been completed and the issue is again before the Board for 
further appellate consideration. 

In a May 2007 rating decision, the RO granted service connection 
for prostate cancer and assigned a 100 percent rating, effective 
March 20, 2007. The Veteran perfected an appeal as to the 
effective date assigned. However, the Board affirmed the 
effective date assigned by the RO in a decision dated in August 
2008. The Veteran appealed the August 2008 Board decision to the 
United States Court of Appeals for Veterans Claims (Court), which 
in an January 11, 2010 Order, granted a Joint Motion for Partial 
Remand of the case to the Board. The Board notes that the motion 
only pertained to the claim for entitlement to an effective date 
earlier than March 20, 2007 for the grant of service connection 
for prostate cancer and that the Veteran expressly abandoned his 
appeal for those portions of the Board decision that denied 
entitlement to an effective date prior to May 13, 2004 for a 60 
percent rating for bronchial asthma and the propriety of the 
reduction of compensation due to incarceration. Although not 
specifically stated in the Court's Order, such Remand action 
serves to vacate that portion of August 2008 Board decision that 
denied entitlement to an effective date earlier than March 20, 
2007 for the grant of service connection for prostate cancer .
In March 2008, the Veteran testified at a personal hearing before 
the undersigned Veterans Law Judge with respect to the issues on 
appeal. A transcript of that hearing has been associated with 
the claims file.

The issue of entitlement to an effective date prior to March 20, 
2007 for the grant of service connection for prostate cancer is 
addressed in the REMAND portion of the decision below and is 
REMANDED to the RO via the Appeals Management Center (AMC), in 
Washington, DC.


FINDING OF FACT

An etiological relationship between the Veteran's hepatitis C and 
air gun injector inoculations in active service has been shown to 
be biologically plausible, and such etiology has not been 
definitively excluded by competent medical evidence of record.


CONCLUSION OF LAW

Hepatitis C was incurred in active service. 38 U.S.C.A. §§ 1110, 
5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303 (2010).


REASONS AND BASES FOR FINDING AND CONCLUSION

VCAA

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's 
duty to notify and assist claimants in substantiating a claim for 
VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 
(West 2002 & Supp. 2005); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 
3.326(a) (2010). 

Upon receipt of a complete or substantially complete application 
for benefits, VA is required to notify the claimant and his or 
her representative, if any, of any information, and any medical 
or lay evidence, that is necessary to substantiate the claim. 38 
U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b) (2010); 
Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA 
notice must inform the claimant of any information and evidence 
not of record (1) that is necessary to substantiate the claim; 
(2) that VA will seek to provide; and (3) that the claimant is 
expected to provide in accordance with 38 C.F.R. § 3.159(b)(1). 
VCAA notice should be provided to a claimant before the initial 
unfavorable agency of original jurisdiction (AOJ) decision on a 
claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004); see also 
Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Further regarding notice, on March 3, 2006, the United States 
Court of Appeals for Veterans Claims (Court) issued its decision 
in the consolidated appeal of Dingess/Hartman v. Nicholson, 19 
Vet. App. 473 (2006). The Court in Dingess/Hartman holds that 
the VCAA notice requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. 
§ 3.159(b) apply to all five elements of a "service connection" 
claim. As previously defined by the courts, those five elements 
include: (1) veteran status; (2) existence of a disability; (3) 
a connection between the veteran's service and the disability; 
(4) degree of disability; and (5) effective date of the 
disability. Upon receipt of an application for "service 
connection," therefore, the Department of Veterans Affairs (VA) 
is required to review the information and the evidence presented 
with the claim and to provide the claimant with notice of what 
information and evidence not previously provided, if any, will 
assist in substantiating or is necessary to substantiate the 
elements of the claim as reasonably contemplated by the 
application. This includes notice that a disability rating and 
an effective date for the award of benefits will be assigned in 
the award of the benefit sought.

With respect to the issue on appeal, the agency of original 
jurisdiction (AOJ), issued VCAA notice letters to the appellant 
in June 2004 and March 2006 that informed him of what evidence 
was required to substantiate the claim and of his and VA's 
respective duties for obtaining evidence and notified him of the 
elements for consideration in the assignment of a disability 
rating and/or effective date in the event of award of the benefit 
sought, per Dingess/Hartman. 

In Pelegrini v. Principi, 18 Vet. App. 112 (2004), the U.S. Court 
of Appeals for Veterans Claims held, in part, that a VCAA notice, 
as required by 38 U.S.C.A. § 5103(a), must be provided to a 
claimant before the initial unfavorable agency of original 
jurisdiction (AOJ) decision on a claim for VA benefits. In the 
present case, complete VCAA notification was not achieved until 
after the initial AOJ adjudication of the claim. Nevertheless, 
the Court in Pelegrini noted that such requirement did not render 
a rating decision promulgated prior to providing the veteran full 
VCAA notice void ab initio, which in turn would nullify the 
notice of disagreement and substantive appeal filed by the 
veteran. In other words, Pelegrini specifically noted that there 
was no requirement that the entire rating process be reinitiated 
from the very beginning. Rather, the claimant should be provided 
VCAA notice and an appropriate amount of time to respond and 
proper subsequent VA process.

Here, the Board finds that any defect with respect to the timing 
of any VCAA notice letter was harmless error. Although the 
notice was provided to the appellant after the initial 
adjudication, the case was readjudicated thereafter, and the 
appellant has not been prejudiced thereby. The content of the 
notice provided to the appellant fully complied with the 
requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b) 
regarding VA's duty to notify. Not only has the appellant been 
provided with every opportunity to submit evidence and argument 
in support of his claim and to respond to VA notices, but the 
actions taken by VA have essentially cured the error in the 
timing of notice. Further, the Board finds that the purpose 
behind the notice requirement has been satisfied because the 
appellant has been afforded a meaningful opportunity to 
participate effectively in the processing of his claim. For 
these reasons, it is not prejudicial to the appellant for the 
Board to proceed to finally decide this appeal. 

With regard to the duty to assist, the claims file contains the 
Veteran's service treatment records, private treatment records, 
and a report of VA examination. Additionally, the claims file 
contains the Veteran's statements in support of his claim. The 
Board has carefully reviewed such statements and concludes that 
he has not identified further evidence not already of record. 
The Board has also perused the medical records for references to 
additional treatment reports not of record, but has found nothing 
to suggest that there is any outstanding evidence with respect to 
the Veteran's claim. 

A VA examination and opinion with respect to the issue on appeal 
was obtained. 38 C.F.R. § 3.159(c) (4). To that end, when VA 
undertakes to provide a VA examination or obtain a VA opinion, it 
must ensure that the examination or opinion is adequate. Barr v. 
Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that 
the VA examination and opinion obtained in this case is more than 
adequate, as it is based on detailed and thorough physical 
examination and the examiner provided a well-supported rationale 
for his stated opinion. Nieves-Rodriguez v. Peake, 22 Vet App 
295 (2008). Accordingly, the Board finds that VA's duty to 
assist with respect to obtaining a VA examination and opinion 
with respect to the issue on appeal has been met. 38 C.F.R. 
§ 3.159(c) (4). 

Thus, based on the foregoing, the Board finds that all relevant 
facts have been properly and sufficiently developed in this 
appeal and no further development is required to comply with the 
duty to assist the Veteran in developing the facts pertinent to 
his claims. Essentially, all available evidence that could 
substantiate the claim has been obtained.

Legal Criteria

The Board has reviewed all of the evidence in the Veteran's 
claims folder. Although the Board has an obligation to provide 
reasons and bases supporting this decision, there is no need to 
discuss, in detail, the extensive evidence of record. Indeed, 
the Federal Circuit has held that the Board must review the 
entire record, but does not have to discuss each piece of 
evidence. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 
2000). Therefore, the Board will summarize the relevant evidence 
where appropriate, and the Board's analysis below will focus 
specifically on what the evidence shows, or fails to show, as to 
the claim.

The standard of proof to be applied in decisions on claims for 
veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 
2002). A veteran is entitled to the benefit of the doubt when 
there is an approximate balance of positive and negative 
evidence. See 38 C.F.R. § 3.102 (2009). When a veteran seeks 
benefits and the evidence is in relative equipoise, the veteran 
prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The 
preponderance of the evidence must be against the claim for 
benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 
(1996).

Service connection may be granted for disability resulting from 
disease or injury incurred in or aggravated by active service. 
38 U.S.C.A. § 1110, 1131 (West 2002); 38 C.F.R. §§ 3.303, 3.304 
(2010).

Regulations also provide that service connection may be granted 
for any disease diagnosed after discharge, when all the evidence, 
including that pertinent to service, establishes that the disease 
was incurred in service. 38 C.F.R. § 3.303(d) (2010).

Present disability resulting from disease or injury in service is 
required to establish entitlement to service connection. 
Degmetich v. Brown, 104 F. 3d 1328 (Fed. Cir. 1997). To 
establish service connection for a disability, there must be 
competent evidence of a current disability (medical diagnosis), 
of incurrence or aggravation of a disease or injury in service 
(lay or medical evidence), and of a nexus between the in-service 
injury or disease and the current disability (medical evidence). 
Caluza v. Brown, 7 Vet. App. 498, 507 (1995). 

The isolated and infrequent use of drugs by itself will not be 
considered willful misconduct; however, the progressive and 
frequent use of drugs to the point of addiction will be 
considered willful misconduct. Where drugs are used to enjoy or 
experience their effects and the effects result proximately and 
immediately in disability or death, such disability or death will 
be considered the result of the person's willful misconduct. 
Organic diseases and disabilities which are a secondary result of 
the chronic use of drugs and infections coinciding with the 
injection of drugs will not be considered of willful misconduct 
origin. (See 38 C.F.R. § 3.301(d) regarding service connection 
where disability or death is a result of abuse of drugs.) Where 
drugs are used for therapeutic purposes or where use of drugs or 
addiction thereto, results from a service-connected disability, 
it will not be considered of misconduct origin. 38 C.F.R. § 
3.301(c)(3).

An injury or disease incurred during active military, naval, or 
air service shall not be deemed to have been incurred in line of 
duty if such injury or disease was a result of the abuse of 
alcohol or drugs by the person on whose service benefits are 
claimed. For the purpose of this paragraph, alcohol abuse means 
the use of alcoholic beverages over time, or such excessive use 
at any one time, sufficient to cause disability to or death of 
the user; drug abuse means the use of illegal drugs (including 
prescription drugs that are illegally or illicitly obtained), the 
intentional use of prescription or non-prescription drugs for a 
purpose other than the medically intended use, or the use of 
substances other than alcohol to enjoy their intoxicating 
effects. 38 C.F.R. § 3.301(d). See also 38 U.S.C.A. § 105; 38 
C.F.R. §§ 3.1(m) (2002). VA's General Counsel has confirmed that 
direct service connection for a disability that is a result of a 
claimant's own abuse of alcohol or drugs is precluded for 
purposes of all VA benefits for claims filed after October 31, 
1990. See VAOPGCPREC 7-99 (1999), published at 64 Fed. Reg. 
52,375 (June 9, 1999); VAOPGCPREC 2-98 (1998), published at 63 
Fed. Reg. 31,263 (February 10, 1998).

Legal Analysis

The Veteran asserts that service connection is warranted for 
hepatitis C. In order to establish service connection on a 
direct-incurrence basis, the Veteran must provide evidence of a 
current disability, an in-service injury or disease, and a nexus 
between the current disability, and an in-service injury or 
disease. With respect to a current disability, post-service 
treatment records show that the Veteran has been diagnosed with, 
and treated for, hepatitis C since 2003. With respect to an in-
service injury or disease, the Veteran contends that he was 
exposed to blood (a hepatitis C risk factor) in service as a 
result of being immunized with an injector air gun while at Ft. 
Leonardwood, Missouri. (Transcript (T.) at page (pg.) 16-17.) 
The Veteran's service treatment records indeed show that he was 
immunized on numerous occasions between 1970 and 1971. He also 
contends that he displayed hepatitis C symptoms while in service. 
(Transcript (T.) at page (pg.) 18-20.) 

The Board notes that the record reflects that the Veteran has 
referenced hepatitis C risk factors other than exposure to blood 
during immunization in service. For example on a hepatitis 
questionnaire that he submitted in June 2004, the Veteran 
indicated that he had shared toothbrushes or razor blades. 
However, the record does not show that the Veteran has alleged 
that he shared toothbrushes or razor blades during service. 
Additionally, the record demonstrates that the Veteran has a 
history of drug abuse. Specifically, a December 1990 clinic note 
from the Texas Department of Corrections shows that drug use was 
a chronic illness or disability. Further, during his March 2008 
Travel Board hearing, the Veteran reported a history of 
intravenous drug use. (Transcript (T.) at page (pg.) 21.) 
However, the competent evidence of record does not show that the 
Veteran ever used drugs during service.

With respect to the etiology of the Veteran's hepatitis C, in 
October 2008, a VA examiner, after an examination of the Veteran 
and a review of his claims file, opined that it was less likely 
than not that the Veteran's hepatitis C was service-related. In 
reaching this conclusion the examiner noted that:

Certain factors go against the Veteran's 
hepatitis C being related to his service. 
There was a greater than 30 years interval 
between the possible exposure and the 
diagnosis of hepatitis C. During this 
interval, there was no indication that the 
Veteran had hepatitis C. As noted above, 
multiple liver function tests were normal. 
There is evidence that during these 30 
years, the Veteran was constantly receiving 
medical attention. In the BVA hearings, 
the Veteran has admitted that he has used 
drugs intravenously and also has used 
cocaine by nasal inhalation. At the 
present time, there is no presumption of 
regular transmission of hepatitis C by jet 
air injections either by the Veteran's 
Administration or the Department of 
Defense. 

However, the October 2008 VA examiner further stated that a 
relationship between the Veteran's hepatitis C and air gun 
injections in service cannot be excluded without resorting to 
speculation. Such clinical statements lend toward an 
interpretation that it is biologically plausible that the 
Veteran's hepatitis C was transmitted in service by air gun 
injector inoculations. 

The Board notes that to the extent that the October 2008 VA 
examiner suggests that the Veteran's hepatitis C is due to drug 
use, 38 U.S.C.A. § 1110 states that "no compensation shall be 
paid if the disability is the result of the person's own willful 
misconduct or abuse of alcohol or drugs." See also 38 C.F.R. § 
3.1(n), 3.301. Thus, the law clearly states that for claims 
filed after October 31, 1990, direct service connection for 
disability that is a result of the claimant's own use of drugs is 
precluded for purposes of all VA benefits. See 38 C.F.R. § 
3.301(a). 

In adjudicating a claim, including as to continuity of 
symptomatology, the Board must assess the competence and 
credibility of the veteran. See Buchanan v. Nicholson, 451 F.3d 
1331 (Fed. Cir. 2006); Washington v. Nicholson, 19 Vet. App. 362, 
368-69 (2005). The Board also has a duty to assess the 
credibility and weight given to evidence. Madden v. Gober, 125 
F.3d 1477, 1481 (Fed. Cir. 1997); Wensch v. Principi, 15 Vet. 
App. 362, 367 (2001). Although the Veteran asserts that his 
current hepatitis C is related to service, he is not competent to 
provide an opinion requiring medical knowledge, such as a 
question of medical causation. Espiritu v. Derwinski, 2 Vet. 
App. 492 (1992). However, he is competent to give evidence about 
what he experienced; for example, he is competent to report that 
he experienced certain symptomatology in service- i.e. fatigue 
and dark brown urine. See, e.g., Layno v. Brown, 6 Vet. App. 465 
(1994). The Board acknowledges that it cannot determine that lay 
evidence lacks credibility merely because it is unaccompanied by 
contemporaneous medical evidence. See Buchanan v. Nicholson, 451 
F.3d 1331, 1337 (Fed. Cir. 2006). However, such lack of 
contemporaneous evidence is for consideration in determining 
credibility. In this case, the Veteran's service treatment 
records are devoid of objective evidence (including on laboratory 
testing) of hepatitis C in service. However, at the time of the 
Veteran's military service in 1970 and 1971, a test for 
antibodies of hepatitis C was not available. The Board 
acknowledges that the October 2008 VA examiner indicated that 
there was no indication that the Veteran had hepatitis C in the 
more than 30 year interval between the possible exposure and the 
diagnosis of hepatitis C and that multiple liver function tests 
were normal. However, it is observed that the record does not 
establish that a test of the Veteran for antibodies of hepatitis 
C had been made prior to 2003. 

In summary, the evidence of record establishes that the Veteran 
received inoculations by air gun injectors in service, a VA 
examiner's statement in October 2008 may be interpreted as 
establishing that it is biologically plausible for the Veteran's 
hepatitis C to have been transmitted by air gun injectors in 
service, and such relationship has not been definitively excluded 
by competent clinical evidence of record. As such, the Board 
finds that the evidence of record is in equipoise as to the issue 
on appeal. With resolution of doubt in the Veteran's favor, the 
Board finds that the evidence of record supports service 
connection for hepatitis C. 38 U.S.C.A. § 5107 (West 2002); 
38 C.F.R. § 3.102 (2010. 


ORDER

Entitlement to service connection for hepatitis C is granted.


REMAND

VA must make reasonable efforts to assist the veteran in 
obtaining evidence necessary to substantiate the claim for the 
benefit sought unless no reasonable possibility exists that such 
assistance would aid in substantiating the claim. 38 U.S.C.A. § 
5103A(a)(West 2002); 38 C.F.R. § 3.159(c)(d) (2010). Such 
assistance shall include providing a medical examination or 
obtaining a medical opinion when such an examination or opinion 
is necessary to make a decision on the claim. 38 U.S.C.A. § 
5103A(d)(West 2002); 38 C.F.R. § 3.159(c)(4) (2010). 

The Veteran asserts that an effective date earlier than March 20, 
2007 is warranted for the grant of service connection for 
prostate cancer. The record reflects that the March 20, 2007 
effective date was assigned because it was the date that a VA 
pathology report showed a diagnosis of adenocarcinoma of the 
prostate. However, although the record shows that the Veteran 
may have been first diagnosed with prostate cancer in the March 
20, 2007 VA pathology report, private treatment records 
(including laboratory test reports) show that the Veteran had 
elevated PSA levels that ranged between 5.7 to 7.6 ng/mL on 
several occasions between 2002 and 2004. Nevertheless, the 
record does not demonstrate that the Veteran has been provided a 
VA opinion to determine the clinical significance of such 
findings and to determine if such findings were, in fact, 
manifestations of the Veteran's prostate cancer. Therefore, 
because this case presents certain medical questions which cannot 
be answered by the Board, the Board finds that a VA opinion is 
warranted to determine whether it is at least as likely as not 
that the Veteran's elevated PSA levels found in private treatment 
records dated between 2002 and 2004 were manifestations of his 
current prostate cancer. See Colvin v. Derwinski, 1 Vet. App. 
191, 175 (1999) [the Board is prohibited from exercising its own 
independent judgment to resolve medical questions]. 

Accordingly, the case is REMANDED for the following action:

1. Contact the Veteran and request that he 
furnish the names, addresses, and dates of 
treatment of all medical providers from 
whom he has received treatment for a 
prostate disability, to include elevated 
PSA levels and prostate cancer, since his 
military service. After securing the 
necessary authorizations for release of 
this information, seek to obtain copies of 
all treatment records referred to by the 
Veteran, not already of record.

2. Following completion of the above, 
including affording the appropriate period 
for response, the Veteran's claims file 
should be forwarded to the appropriate VA 
clinician who should provide an opinion as 
to the date of onset of the Veteran's 
prostate cancer. The examiner should 
specifically be requested to comment on the 
clinical significance of the elevated PSA 
levels (between 5.7 to 7.6 ng/mL) reported 
in private treatment records dated between 
2002 and 2004. The examiner should also be 
requested to furnish an opinion concerning 
whether it is at least as likely as not 
that any such elevated PSA levels were 
manifestations of the prostate cancer that 
the Veteran was diagnosed with in a March 
20, 2007 VA pathology report. If it is 
found that the elevated PSA levels were 
manifestations of prostate cancer, the 
examiner should also indicate what specific 
date represented the earliest manifestation 
of the Veteran's prostate cancer. 

The rationale for all opinions expressed 
should be set forth. All necessary tests 
should be performed. The claims file and a 
separate copy of this remand must be made 
available to and reviewed by the examiner 
prior, and pursuant, to conduction and 
completion of the examination. The 
examiner must annotate the examination 
report that the claims file was in fact 
made available for review in conjunction 
with the examination.

3. Following completion of the above, 
readjudicate the issue on appeal. If the 
benefit sought on appeal is not granted, 
the Veteran and his attorney should be 
furnished an appropriate Supplemental 
Statement of the Case and be provided an 
opportunity to respond.



The appellant has the right to submit additional evidence and 
argument on the matter the Board has remanded. Kutscherousky v. 
West, 12 Vet. App. 369 (1999).


_____________________________________________
U. R. POWELL
Veterans Law Judge, Board of Veterans' Appeals



 Department of Veterans Affairs