Citation Nr: 1542440 
Decision Date: 09/30/15 Archive Date: 10/05/15

DOCKET NO. 09-49 359 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for residuals of a right ankle injury. 

2. Entitlement to service connection for amputation of the right foot and leg below the knee, to include as secondary to residuals of a right ankle injury.


REPRESENTATION

Appellant represented by: Military Order of the Purple Heart of the U.S.A.


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

Ashley Martin, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from December 1962 to January 1966. He also had a period of active duty for training (ACDUTRA) from September 1960 to March 1961.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

The Veteran testified in support of this appeal during a videoconference hearing held before the undersigned Veterans Law Judge in November 2013. A copy of the hearing transcript is of record.

The Board remanded this matter in March 2014. As there has been substantial compliance with the remand orders, the Board may therefore proceed with a determination of the issues on appeal. See Stegall v. West, 11 Vet. App. 268 (1998).


FINDINGS OF FACT

1. There has been no demonstration by competent medical, nor competent and credible lay, evidence of record that the Veteran's residuals of a right ankle injury are related to service.

2. There has been no demonstration by competent medical, nor competent and credible lay, evidence of record that the amputation of the right foot and leg below the knee is related to service or was proximately caused by a service-connected disability.

CONCLUSIONS OF LAW

1. The criteria for service connection for residuals of a right ankle injury have not been met. 38 U.S.C.A. §§ 1110, 1111, 1131, 1132 (West 2014); 38 C.F.R. §§ 3.303 (2015).

2. The criteria for service connection for amputation of the right foot and leg below the knee, to include as secondary to residuals of a right ankle injury have not been met. 38 U.S.C.A. §§ 1110, 1111, 1131, 1132 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). Notice was provided in a November 2008 letter. Accordingly, the duty to notify has been fulfilled.

The RO has obtained service treatment, VA treatment and private treatment records. Pursuant to the Board's prior remand, the RO sent the Veteran an April 2014 letter requesting information needed to obtain records from medical providers who treated him for his right ankle complaints since service, including the 2006 amputation. The Veteran did not respond to the request. Therefore, the Board finds that further attempts to obtain these records would be futile. 

A December 1974 letter indicates that the Veteran is in recepit of disability benefits from the Social Security Administration (SSA). When VA has actual notice of the existence of relevant SSA records, the duty to assist includes requesting those records from SSA. See Golz v. Shinseki, 590 F.3d 1317, 1323 (Fed. Cir. 2010). After thorough review of the record and the Veteran's particular circumstances, the Board finds that the Veteran's SSA records are not relevant to his claims and need not be obtained and associated with the file. In this regard, the Board notes that the record does not contain any evidence demonstrating that the Veteran is receiving SSA disability benefits for residuals of his right ankle injury or for the amputation of his lower right extremity. Contemporaneous medical records detail injuries sustained in a post-service motor vehicle accident. The Veteran's amputation was in 2006, many years after he began receiving SSA disability benefits. 

A medical opinion addressing the etiology of the Veteran's residuals of a right ankle injury was obtained in July 2014. The Board finds that the medical opinion is adequate; as it was conducted by a medical professional who reviewed the claims file and provided opinions supported by a rationale. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

The Board acknowledges that the record does not contain a medical opinion addressing the etiology of the amputation of the right lower extremity. However, as will be discussed below, there is no indication that the Veteran's amputation may be associated with his active service. Accordingly, VA is not required to obtain an examination or medical opinion. McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Based on the foregoing, the Board concludes that VA has satisfied the duty to assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in development. Quartuccio v. Principi, 16 Vet. App. 183 (2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Smith v. Gober, 14 Vet. App. 227 (2000).

II. Legal Criteria 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247 (1999). Service connection may be granted for any disease diagnosed after discharge from active duty when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Service connection may also be granted under a theory of secondary service connection, where there is: (1) evidence of a current disorder; (2) evidence of a service-connected disability; and, (3) nexus evidence establishing a connection between the service-connected disability and the current disorder. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

In addition, the regulations provide that service connection is warranted for a disorder that is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310.

The Board is charged with the duty to assess the credibility and weight given to evidence. Wensch v. Principi, 15 Vet. App. 362, 367 (2001); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). And, when considering whether lay evidence is satisfactory, the Board may properly consider internal inconsistency of the statements, facial plausibility, and consistency with other evidence submitted on behalf of the Veteran. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007).

III. Right Ankle Injury

The Veteran seeks service connection for residuals of a right ankle injury. He contends that he sprained his ankle in service and that injury caused persistent symptoms of right ankle weakness, instability, and other complications which led to subsequent injuries, and ultimately, amputation of his right lower extremity below the knee. 

Service treatment records show that the Veteran sprained his right ankle in September 1963 and was placed on light duty. A January 1964 radiographic report shows that the Veteran's right ankle was negative for fracture. A November 1965 release from active duty (REFRAD) examination reveals that the Veteran had clinically normal lower extremities. The report does not make any mention of the right ankle. In an accompanying November 1965 Report of Medical History, the Veteran checked "yes" to questions about whether he had "swollen or painful joints" or "foot trouble." The examiner detailed numerous complaints made by the Veteran at that time; however, none referred to the ankle or back. 

Following service, the Veteran sustained a right ankle injury when he fell from a saw horse at work. X-rays at that time revealed a fracture through the medical malleolus, extending into the corner of the ankle joint with some slight displacement and widening of the ankle mortise. The Veteran was admitted to the hospital for repair of the fractured medial malleolus. A December 1971 letter from a private physician treating the Veteran for the fracture noted that surgery revealed a "quite old" fracture which had been disrupted by the recent injury. The physician indicated that the Veteran injured his ankle 7 or 8 months prior to his work injury. 

An April 1973 VA examination noted that the Veteran was injured in an auto accident in January 1972; broke his left femur in February 1972 and his right ankle in November 1971 "2nd time Eight months before 1st time." On examination, the right ankle fracture was noted to have healed "nicely" post-surgery. The examiner found no disability, except for some pain on excessive walking and weight bearing. There was no evidence of swelling. The path of a previously inserted screw was seen in the lower end of the tibia. 

The report of a January 1975 VA orthopedic examination noted that the Veteran was unable to stand or walk due to severe injury to the pelvis and associated injury to the right sciatic nerve. The examiner opined that the Veteran had received an extensive comminuted fracture of the pelvis involving the sacroiliac joint, the pubic rami, and the symphysis pubis. There was fracture of the left femur and trochanteric area of the left base of the neck of the femur; fracture/dislocation of the right head of the femur and fracture through the acetabulum. Those injuries were associated with foot drop in the right and paralysis with right sciatic nerve, totally disabling. 

VA treatment records from September 2012 show that the Veteran's right leg was amputated below the knee in 2006. 

Pursuant to the Board remand, a medical opinion was obtained in July 2014, where the VA examiner concluded that the Veteran's right ankle condition was less likely than not incurred in or caused by the in-service ankle sprain. The examiner noted the details of the Veteran's in-service ankle injury and the January 1964 radiographic report that showed no evidence of a fracture. At separation, the Veteran reported numerous complaints, but none related to the ankle. Physical examination of the lower extremities was normal. Following service, the Veteran injured his ankle again in November 1971. The examiner commented that treatment records from that time show that the Veteran sustained an "old fracture" that was disrupted by the November 1971 injury. The Veteran contends that the "old fracture" occurred in service. However, the examiner noted that the Veteran injured his ankle 7 to 8 months prior to the 1971 injury. This examiner opined that this time frame "makes sense" as the body was working to repair the fracture site, but it had not had enough time to mend thoroughly. Thus it was very vulnerable to re-fracture. The examiner also noted that the Veteran would have sought further care in service if he suffered a fracture. Furthermore, there were other episodes of significant trauma in the Veteran's life, including 2 severe automobile accidents, which could have resulted in injuring his right ankle. Lastly, the examiner referred to studies, which show that ankle sprains fully recover within three years. 

Based on a review of the record, the Board finds that service connection is not warranted for residuals of a right ankle injury. Although the Veteran injured his right ankle in service, there is no evidence that his current condition is related to the in-service injury. A radiographic report following the in-service injury shows no evidence of fracture. Post-service treatment records also do not link the Veteran's condition to the in-service injury. Instead, the records indicate that the Veteran injured his ankle several times after service. December 1971 treatment records show that the Veteran was in a work-related injury in November 1971 and sustained an injury to his ankle 7 to 8 months prior. That conclusion is supported by the April 1973 VA examiner's recitation of the history of the Veteran's right ankle injuries in November 1971 and eight months before. Furthermore, the July 2014 VA examiner concluded that the Veteran's right ankle condition was less likely than not incurred in or caused by the in-service ankle sprain. She mainly reasoned that the Veteran sustained ankle injuries and significant episodes of trauma after service that could have resulted in his right ankle condition. 

The Veteran claims that he had persistent symptoms since the ankle injury in service; however, the overall record does not support that assertion. He did not report any ankle complaints at separation, but reported numerous other complaints. As between his reports made contemporaneous to service, where there is no reasonable motivation for providing inaccurate information and the report was not subject to the effects of time on memory, and his reports made in the context of seeking monetary benefits from VA, the Board finds the reports made during service to be more probative. Given the inconsistency in the present complaints compared to the in-service reports, the Board finds the Veteran is not credible regarding continuing right ankle symptoms from service to the first post-service ankle injury. 

The only other evidence which purports to link the Veteran's residuals of a right ankle injury to his military service consists of the statements of the Veteran. Lay persons are competent to provide opinions on some medical issues. Kahana v. Shinseki, 24 Vet. App. 428 (2011). However, the disability at issue in this case could have multiple possible causes and thus, falls outside the realm of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007).

Without competent and credible evidence of an association between the residuals of the Veteran's right ankle injury and his active duty, service connection is not warranted. As the preponderance of evidence is against the Veteran's service connection claim, the benefit-of-the-doubt rule does not apply, and the Veteran's service connection claim is denied. See 38 U.S.C.A §5107.

IV. Amputation of the Right Lower Extremity 

The Veteran claims that the amputation of his right lower extremity is either secondary to the residuals of his right ankle injury or related to an in-service back injury. The Veteran contends that he injured his back "at the same time" he injured his ankle in service and that injury resulted in nerve damage, which then led to his right foot and leg amputation. 

The Veteran's service treatment records reveal no complaints, treatment or diagnosis of a back condition. During his December 1962 enlistment and November 1965 release from active duty (REFRAD) examinations, the Veteran did not report any problems with his back, although he reported numerous other problems. It would seem likely that if he experienced any other problems (i.e., with his back) he would have reported them. Clinical evaluations conducted throughout ACDUTRA and active duty (September 1960, February 1961, December 1962, November 1965) also show no abnormalities in the spine or musculoskeletal system. 

VA treatment records from September 2012 show right below the knee amputation in 2006 secondary to osteomyelitis status post left femoral fracture with shortening and left knee degenerative joint changes. 

Initially, the Board notes that service connection is not warranted on a secondary basis. The Veteran's residuals of a right ankle injury are not service connected. Thus, there is no service-connected disability to form the basis for secondary service connection. Accordingly, service connection for amputation of the right lower extremity is not warranted on a secondary basis.

Furthermore, the Board also finds that direct service connection is not warranted. The Veteran's service treatment records are silent for any complaints, treatment, or a diagnosis of a back condition. Clinical evaluations in service also do not reveal any abnormalities in the Veteran's spine. The Board finds the Veteran's assertions that he injured his back in service are not credible, given the inconsistencies between his reports in service (including at the time of the separation examination) and his assertions made in connection with the current claim. 

Furthermore, post-service treatment records do not attribute the Veteran's amputation to a back condition. Instead, VA treatment records show that the Veteran's amputation was secondary to osteomyelitis status post left femoral fracture with shortening and left knee degenerative joint changes

The Board is sympathetic to the Veteran's assertions that the amputation of his right lower extremity should be service connected. Lay persons are competent to provide opinions on some medical issues. Kahana, 24 Vet. App. at 428. However, the disability at issue in this case could have multiple possible causes and thus, falls outside the realm of common knowledge of a lay person. Jandreau, 429 F.3d at 1377.

In light of the above discussion, the Board finds that the claim of entitlement to service connection for amputation of the right foot and leg below the knee, to include as secondary to residuals of a right ankle injury must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim of entitlement to service connection, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b).


ORDER

Entitlement to service connection for residuals of a right ankle injury is denied. 

Entitlement to service connection for amputation of the right foot and leg below the knee, to include as secondary to residuals of a right ankle injury is denied.



____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs