# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-2210

JAMES E. WENSCH, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

( Decided December 20, 2001   )

*Ronald L. Smith,* of Washington D.C., was on the pleadings for the appellant.

*Leigh A. Bradley*, General Counsel; *Ron Garvin*, Assistant General Counsel; and *Mary Ann Flynn*, Deputy Assistant General Counsel, all of Washington D.C., were on the pleadings for the appellee.

Before FARLEY, HOLDAWAY, and IVERS, *Judges*.

FARLEY, *Judge*, filed the opinion of the Court.  IVERS, *Judge,* filed a concurring opinion.

FARLEY, *Judge*:  In an August 18, 1999, decision, the Board of Veterans' Appeals (Board or BVA) denied the appellant service connection for arthritis of the back, both hips, and the sacroiliac joint.  The Board also denied the appellant's claim for an increased rating for residuals of a bullet wound to the left Achilles tendon with sensitive scar and fibrious restriction of the left ankle. Since the appellant fails to mention the increased rating claim in his brief, the Court construed the claim to be abandoned. *See Bucklinger v. Brown*, 5 Vet.App. 435 (1993).  The appellant appeals that part of the Board decision that denied service connection for disabilities of the back, both hips, and the sacroiliac joint, claimed as secondary to the appellant's service-connected gunshot wound (GSW) residuals of his left lower leg.  The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the Board's decision.

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096, was enacted on November 9, 2000.  In December 2000, the Court ordered supplemental briefing

regarding the impact, if any, of the VCAA on the appellant's claims. The appellant filed a supplemental brief in January 2001 and the Secretary filed his supplemental brief in February 2001. Both parties asserted that the VCAA was inapplicable in this case. In a Court order issued in May 2001, the parties were directed to file supplemental briefing addressing the possibility of waiver of the VCAA by the appellant. The appellant responded with a supplemental brief dated June 27, 2001, and the Secretary responded with a supplemental brief dated September 10, 2001. Although we asked for and appreciate the additional briefing, we now determine that the question presented is not one of waiver but whether the VCAA has any application in the instant case. We conclude, as we did in *Dela Cruz v. Principi*, 15 Vet.App. 143 (2001), that the VCAA is not implicated in this case.

## I. BACKGROUND

The appellant, James E. Wensch, served on active duty in the U.S. Army from December 1942 to November 1944. Record (R.) at 44. His service medical records read that he sustained a gunshot wound to the left leg in September 1943. R. at 55. On November 22, 1944, the VA awarded the appellant a combined service connection disability rating of 40%. R. at 142. This award included (1) a 20% disability rating for "ankylosis, fibrous, residual of gunshot wound of lower leg, left"; (2) a 20% disability rating for "paralysis, partial, severe, sural nerve, left, residual of gunshot wound"; and (3) a 10% rating for "painful scar of a gunshot wound, adherent." *Id.*

On May 7, 1985, the appellant submitted a Statement in Support of Claim (SSC) in which he asked "that service connection be established for low back pain as the result of [his] left leg." R. at 300. In June 1985, the appellant was examined at a VA neurology clinic. R. at 378. The physician's progress notes from that visit read that the appellant's low back pain started two to three years prior to the visit. *Id.*

In October 1985, the appellant submitted another SSC, dated August 1985, which had been completed by a private physician, Dr. F. J. Quincannon. R. at 307. In that statement, Dr. Quincannon reported that he last "saw" the appellant on October 9, 1984, and opined that the appellant "will probably begat worsening of his back problem in respect to his radiculopathy, muscle atrophy and sensation." *Id.* Dr. Quincannon recommended that the appellant "be re-evaluated . . . in the left calf and left thigh to see the degree of deterioration over a period of years." *Id.* In a letter sent to the VA Regional Office (RO) in October 1985, Dr. Quincannon wrote that the

2

appellant has "sensory loss, inability to dorsal flex the foot, pain in the heel and pain in the Achilles bursa." R. at 309. Dr. Quincannon remarked that these conditions were "related to [the appellant's] old injury and probable cicatrisation and joint space involvement with typical pain, neuralgia associated with it." *Id.*

A personal hearing was conducted on November 13, 1985. R. at 315-26. During this hearing, the appellant stated that he had "constant soreness in his back," which he attributed to his service-connected left leg disability. R. at 319. In January 1986, the appellant submitted another letter from Dr. Quincannon. R. at 330. In this letter, Dr. Quincannon indicated that an X-ray taken in October 1984 showed "degenerative changes" of the appellant's lumbar spine. *Id.* Furthermore, Dr. Quincannon opined that the appellant's back pain was a "chronic condition related to his old war injury of the posterior left leg." *Id.*

On January 3, 1986, a VA physician examined the appellant. R. at 333-36. In the examination report, the physician noted that the appellant stated he had "low back pain for over a year." R. at 333. The physician reported "spinous processes nontender" without spasm and noted the appellant's complaints of "L5 paraspinal pain." *Id.* The physician diagnosed the appellant with osteoarthritis of the lumbar spine, and concluded that he could "not associate the lumbar spine complaints with the leg GSW." R. at 335. On March 11, 1986, the RO denied service connection for the osteoarthritis of the lumbar spine. R. at 338-39. The appellant did not appeal that decision.

The appellant, on July 17, 1995, filed another SSC. R. at 357. The appellant wrote, "[p]lease consider this as a claim for service connection for a back condition as [secondary] to service[-]connected left ankle condition." *Id.* He submitted a letter from a private physician, Dr. McPhee, of the Mayo Clinic. R. at 360. In that letter, Dr. McPhee stated that he had examined the appellant on August 14, 1995, and that the appellant reported pain across the sacroiliac regions bilaterally, with periodic radiation of pain into the thighs. *Id.* The examination also had revealed tenderness over the sacroiliac areas and restriction of motion of the hips. *Id.* X-ray studies showed "quite severe degenerative changes in both sacroiliac joints, and moderate evidence of degenerative arthritis in both hips with hypertrophic changes." *Id.* Dr. McPhee concluded that "[n]o doubt his abnormal walking over the years contributed to degenerative changes that occurred in the sacroiliac joints and hips. They are contributing to his symptoms at this time." *Id.*

Dr. Parent, a Mayo Clinic gastroenterologist, examined the appellant in August 1995. R. at 366-373. The exam included discussion concerning the appellant's orthopedic and neurologic complaints. R. at 367. Dr. Parent concluded that "the patient's leg pains were due to degenerative arthritis of the sacroiliac and hip joint, contributed to by the war injury to the lower aspect of his leg." R. at 366.

The RO, in January 1996, denied, inter alia, the appellant's attempt to reopen "the claim for service connection for back condition to include arthritis as secondary to service[-] connected lower extremity." R. at 381. The appellant filed a Notice of Disagreement (NOD) on January 30, 1996, (R. at 385) and the RO issued a Statement of the Case in February 1996 (R. at 388-402). The appellant sought appellate review of the RO's denial via an appeal to the BVA in March 1996. R. at 404.

The appellant submitted another letter from Dr. McPhee, dated March 1996. R. at 409. In that letter, Dr. McPhee expressed his view that the appellant's abnormal gait, "which he has had for many years due to his war injury, . . . contributed to the degenerative arthritis of his hips, sacroliliac joints, and lumbosacral spine." *Id*. On April 17, 1996, the RO conducted a personal hearing with the appellant. R. at 421. During the hearing, the appellant stated that his hip problem began in the 1950s. R. at 425. The appellant further stated that two physicians, Drs. Romberger and Quintana, told him that he would have back problems because of his leg condition. *Id.* The appellant then stated that his back problems began in 1986, and that both of these doctors are now deceased. *Id.*

The record shows that in May 1996 the appellant presented for a VA compensation and pension (C&P) examination conducted by Dr. Savlov. R. at 438-40. Dr. Savlov noted that in the mid-1960s the appellant "began noticing pain in the left buttock, radiating down the posterior left thigh" that had been diagnosed as sciatic pain. R. at 438. Dr. Savlov noted the appellant's "foot drop" but was unable to address the relationship of the "foot drop" to the sciatic pain. R. at 440. The medical report included findings of degenerative arthritis of the lumbar spine as well as bilateral degenerative arthritis of the hips. R. at 438.

In a Supplemental Statement of the Case and Hearing Officer's Decision of August 1996, the RO sustained the prior finding that no new and material evidence had been submitted to reopen the claim for service connection for a back condition to include arthritis. R. at 445. In October 1996, the appellant filed a NOD. R. at 449. In March 1997, the appellant's representative from Disabled

American Veterans (DAV) filed a Statement of Accredited Representative asking that the BVA reopen and grant the claim. R. at 464-470. DAV also submitted an Informal Hearing Presentation in June 1997. R. at 471-73. In July 1997, the BVA remanded the increased rating claim and the instant secondary service connection claim for additional development. R. at 475-81.

In February 1998, the appellant presented for another C&P examination with VA physician Dr. Moga. R. at 490-91. After examining the veteran and taking x-rays, Dr. Moga concluded that "[t]here is no direct connection between [the appellant's] low back and hips to the limited motion of the left ankle. There has not been any aggravation of the hip and low back disabilities as a result of the service[-]connected left ankle gunshot wound residual limited motion." R. at 491. Dr. Moga confirmed that he had reviewed the appellant's entire set of records prior to the examination. *Id.*

On August 18, 1999, the BVA issued the decision now on appeal. In that decision, the BVA found that new and material evidence had been submitted to reopen the claim for entitlement to service connection for a back disability. *Id.* After adjudicating the claim on the merits, the BVA denied entitlement to service connection for a back disability to include arthritis. R. at 41. The BVA also denied entitlement for service connection for a hip and sacroiliac disability to include arthritis and denied entitlement to an increased evaluation for residuals of a bullet wound of the left Achilles tendon with sensitive scar and fibrous restriction of the left ankle. *Id*.

The appellant filed a brief and a reply brief in which he argued for reversal of that part of the Board's decision that denied his service connection claims on the basis of its alleged failure to apply the benefit-of-the-doubt rule. Additionally, he urged the Court to remand with instructions that the VA adjudicate the issues of disability rating and effective date. He also argued that the Court should modify its interpretation of the clearly erroneous standard of review so as to permit it to reverse a Board's decision that is merely arbitrary and capricious. The Secretary filed a brief in which he argued that the BVA's decision was in accordance with the law and thus should be affirmed.

## II. ANALYSIS

### A. BVA's Factual Determination

The determination of whether the appellant's injury was incurred in or aggravated by military service is a factual determination. *See Wray v. Brown*, 7 Vet.App. 488, 492 (1995); *Wood v.*

*Derwinski*, 1 Vet.App. 190, 192 (1991). Under 38 U.S.C. § 7261(a)(4), in order for this Court to overturn a BVA finding, this Court must conclude that the finding was "clearly erroneous." If there is a "plausible" basis in the record for the BVA's factual determination, this Court cannot overturn that decision. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990).

The BVA reviewed the appellant's claims folder, including all medical opinions favorable and unfavorable to the appellant's claims. Notwithstanding the favorable medical opinions, the BVA found the February 1998 VA medical opinion to be highly probative. R. at 15. The Board stated:

> [The February 1998 ]medical opinion was rendered by an expert who was able to conduct a longitudinal review [of] the veteran's claims folder. The Board points out that the medical records in the claims folder document [show] the severity of the service-connected left leg disability and the veteran's functional limitations due to the left leg disability. Such information is pertinent and must be considered when determining whether the veteran's back disability is due to the service-connected left leg disability. The Board also notes that the VA examiner cited to the reasons and bases that he relied upon in formulating the conclusions and provided an etiology for the back disability. *Id.*

The BVA also found the 1986 VA examination report, in which the examiner was unable to associate the lumbar spine complaints with the gunshot wound to the left leg, to be highly probative. R. at 16. The Board based this decision on the fact that the examination was a "special orthopedic examination and the VA examiner extensively examined the veteran's back disability and the service-connected residuals of the gunshot wound to the left leg prior to formulating his conclusions." *Id.* In addition to discussing why the VA medical examinations were found to be highly probative, the BVA explained why the private medical examinations were found to have "limited probative value." *Id.* The BVA stated that neither Dr. McPhee nor Dr. Quincannon provided "reasons and bases for their conclusions" and it was unclear whether either doctor examined the veteran's service-connected left leg disability extensively or if a longitudinal review of the veteran's claim file was conducted. *Id.* "It is not an error for the BVA to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reasons and bases." *Owens v. Brown*, 7 Vet.App. 429, 433 (1995). It is the duty of the BVA, not this Court, to assess the credibility and weight to be given to the evidence. *Wood,* 1 Vet.App. at 193. Because there is a plausible basis in the record for the Board's factual finding, the Court holds that

the BVA's denial of service connection for a back, hip, and sacroiliac joint condition, including arthritis, was not "clearly erroneous." *See Gilbert, supra.* Moreover, the BVA's discussion of all the medical opinions and rationale for finding some more probative than others demonstrate that the Board based its conclusions on adequate reasons and bases. *See* 38 U.S.C. § 7104 (d)(1). Accordingly, we will affirm that decision.

The appellant argued that he was entitled to the "benefit of the doubt" because there is an approximate balance of positive and negative evidence in support of his claim. The appellant is correct that, pursuant to 38 U.S.C. § 5107(b), veterans enjoy the "benefit of the doubt" with regard to factual issues material to their claims if the evidence is in equipoise. *See Gilbert,* 1 Vet. App. at 53-56. Weighing of the evidence, however, is not the duty of the appellant. It is the obligation of the Board to determine "whether the evidence supports the [appellant's] claim or is in relative equipoise, with the veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied." *Gilbert,* 1 Vet.App. at 53. In the instant case, the Board did not find that the evidence was in equipoise but instead found that the preponderance of the evidence did not support an entitlement for service connection for appellant's back, hip, and sacroiliac condition. As noted above, the Court found that that determination was not clearly erroneous. Therefore, the Board did not err in connection with the benefit of the doubt doctrine. *See McGrath v. Gober*, 14 Vet.App. 28, 34 (2000); *Schoolman v. West*, 12 Vet.App. 307, 311 (1999).

## B. The Veterans Claims Assistance Act

Among other things, the VCAA, enacted November 9, 2000, eliminated the well-grounded-claim requirement and modified the Secretary's duties to notify and assist claimants. *See generally* VCAA, §§ 3, 4, 7; *see also Holliday v. Principi,* 14 Vet.App. 280, 284-86 (2001) (holding all sections of VCAA retroactive). This Court has held, however, that the holding in *Holliday* "was not intended to stand for the proposition that the VCAA requires remand of all pending claims and that this Court may not decide that the VCAA could not affect a pending matter." *Livesay v. Principi*, 15 Vet.App. 165, 178 (2001)(en banc).

Case law illustrates that the VCAA is not applicable in all cases. In one case, the Court held that the VCAA was inapplicable to a matter of pure statutory interpretation. *See Smith v. Gober*, 14 Vet. App. 227, 231-32 (2000). In another case, the Court concluded that the appellant was fully

notified and aware of the type of evidence required to substantiate his claims and that no additional assistance would aid in further developing his claims. *Dela Cruz*, 15 Vet.App at 149. When there is extensive factual development in a case, reflected both in the record on appeal (ROA) and the BVA's decision, which indicates no reasonable possibility that any further assistance would aid the appellant in substantiating his claim, this Court has concluded that the VCAA does not apply. *Id; see also* VCAA § 3(a), 114 Stat. 2097, 38 U.S.C. § 5103A(a)(2) (Secretary not required to provide assistance "if no reasonable possibility exists that such assistance would aid in substantiating the claim"). In the instant case, the extensive ROA and the detailed Board decision demonstrate the futility of any further evidentiary development. Indeed, both parties agree that the VCAA is inapplicable. The appellant filed a supplemental brief in which he asserted that he "is not prejudiced by any lack of notice with respect to the evidence needed to establish his claim or by any lack of assistance from the Secretary." Appellant's Suppl. Br. at 9. The Secretary filed a reply to the appellant's supplemental brief in which he argued that a remand for application of the VCAA is not required because this case falls into the category of "cases in which it is obvious that all possible evidence has already been obtained or the failure to obtain it is fully accounted for [which] the Secretary maintains that such cases fall under the Court's rationale in *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991)." Secretary's Suppl. Br. at 2. Here, as in *Dela Cruz*, the factual evidentiary development is such that "no reasonable possibility exists that [any] further assistance would aid the appellant in substantiating his claim." VCAA § 3(a), 114 § Stat. 2097, 38 U.S.C. § 5103A(a)(2). Thus, the VCAA's duty to notify and duty to assist provisions are not applicable. Accordingly, the Court concludes that the VCAA does not require remand.

C. Standard of Review

Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert*, 1 Vet.App. at 53. The appellant's counsel argued that the Court should reexamine its case law interpreting the "clearly erroneous" standard of review, particularly in light of *In Re Zurko,* 142 F.3d 1447 (Fed. Cir. 1998) and *Dickinson v. Zurko,(Zurko)* 527 U.S. 150, 119 S. Ct. 1816 (1999). In *Zurko,* the Supreme Court

reversed the Court of Appeals for the Federal Circuit (Federal Circuit) and held that the Federal Circuit should have applied the Administrative Procedure Act's standards, under 5 U.S.C. § 706, when reviewing findings of fact by the Patent and Trademark Office and not the "clearly erroneous" standard of review. This Court has consistently applied the "clearly erroneous" standard set forth by the U.S. Supreme Court in *United States v. United States Gypsum Co.,*333 U.S. 364, 68 S. Ct. 525 (1948), which the Court in *Zurko* cited when defining the "clearly erroneous" standard. *Zurko,* 527 U.S. at 155*; see*, *e.g.*, *Muehl v. West,* 13 Vet. App. 159, 161 (1999)*; Villano v. Brown,* 10 Vet. App. 248, 250 (1997)*; Gilbert*, *supra*. Moreover, Congress has explicitly established that this Court is to apply the "clearly erroneous" standard of review when reviewing findings of material fact. *See* 38 U.S.C. § 7261(a)(4). Accordingly, the Court will not reexamine its interpretation of the "clearly erroneous" standard at this time. Counsel's argument, that this Court deviate from this statutorily imposed standard, raised in the instant appeal and other appeals before the Court (*see Melton v. West,* 13 Vet. App. 442 (2000))*,* would be more properly advanced in some other forum.

### III. CONCLUSION

Upon consideration of the foregoing analysis, the ROA, and the parties' pleadings, the Court holds that the appellant has not demonstrated that the BVA committed error - in its findings of fact, conclusions of law, procedural processes, articulation of reasons or bases, or consideration of the benefit-of-the-doubt rule - that would warrant reversal or remand. Therefore, the Court affirms the August 18, 1999, BVA decision.

IVERS, *Judge*, concurring: The procedural history of this appeal, particularly as depicted by the orders for supplemental pleadings, is indicative of the developing nature of the law in the wake of the enactment of the VCAA. We have now considered and opined regarding the statutory amendments made by the VCAA for more than a year. This Court has a duty to make decisions upon proceedings before the Court "as quickly as practicable," 38 U.S.C. § 7267(a). As we fulfill that duty in this post-VCAA era, the Court should move toward dispositions of appeals in light of the entire body of veterans law without an *unnecessarily* sharp focus on the effect of the VCAA.

Viewing the VCAA in the context in which it was written and debated by Congress exposes the limits of its scope. This Court's opinion in *Morton v. West*, 12 Vet.App. 477 (1999), spurred

9

Congress into action toward the eventual VCAA. *See, e.g.*, 146 CONG. REC. S9211-12 (daily ed. Sep. 25, 2000) (statements of Senators Specter and Rockefeller). The *Morton* decision included the following text:

> This Court and the Federal Circuit have interpreted 38 U.S.C. § 5107 as conditioning the Secretary's duty to "assist . . . in developing the facts pertinent to the claim" upon the submission by the claimant of [a] well-grounded claim. . . . [N]either the Secretary nor this Court is free to ignore a condition precedent established by Congress. Congress, of course, can choose to change or eliminate the well-grounded requirement altogether. Indeed, it is possible that after evaluating such considerations as fairness, equity, and the personnel, facility, and financial expenditures which would be required, Congress might well opt for requiring the Secretary to assist and examine all veterans, regardless of whether well-grounded claims have been submitted. But that balancing process is the responsibility of the legislative branch, not this Court. It is our responsibility to interpret existing law and to apply it to the record before us.

*Morton*, 12 Vet.App at 485-86. The VCAA expressly referenced "the Morton Case," and required the Secretary to readjudicate claims that were denied or dismissed as not well grounded, when those decisions had become final in the period between that date of the decision in *Morton* and the date of enactment of the VCAA. *See* 38 U.S.C. § 5107 note (2000) (Effective and Applicability Provisions).

In the VCAA, Congress removed from section 5107 the previous requirement that claims for veterans' benefits be well grounded. The effect of the removal was to trigger the Secretary's duty to assist claimants at the time a claim is received, rather than at the time it is determined that a claim is well grounded. Congress did not expand the substantive nature of the duty to assist, but simply stepped up its chronological occurrence, and shifted the codification of that duty to a new section 5103A. *See also* 66 Fed. Reg. 45620, 45630-32 (2001) (to be codified at 38 C.F.R. § 3.159). Section 5103A provides more detail of the Secretary's duty to assist than the prior codification, and recognizes the limits of that duty as set forth in the case law of this Court. *See* 38 U.S.C. § 5103A(a) (indicating Secretary's discretionary authority in performing the duty to assist); *Gobber v. Derwinski*, 2 Vet.App. 470, 472 (1992); *Wood v. Derwinski*, 1 Vet.App. 190, 193 (1991); *see also* Duty to Assist, Supplementary Information, 66 Fed. Reg. 45620, 45622-24 (2001).

The Court must recognize the limits of the duty to assist when deciding matters on appeal. It is the duty of this Court to interpret "statutory[ ] and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary."  38 U.S.C. § 7261(a)(1). Determining whether an action of the Secretary, and of the Board, squares with the Court's interpretation of the post-VCAA statutory and regulatory provisions is within the authority of the Court.  The Court has the power to, as the majority herein does, determine that the duties pronounced by the VCAA are not applicable in certain cases. *See Burris v. Principi*, ___ Vet.App. ___, ___, No. 00-1770, slip op. at 9 (Dec. 17, 2001) (Farley, J., concurring).