Citation Nr: 1703149 
Decision Date: 02/02/17 Archive Date: 02/15/17

DOCKET NO. 07-12 042 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUE

1. Entitlement to service connection for a genitourinary disorder, to include chronic cystitis.

2. Entitlement to an effective date earlier than June 4, 2004 for the award of service connection for degenerative disc disease (DDD) of the lumbar spine.

3. Entitlement to an initial higher evaluation for DDD of the lumbar spine prior to an after March 9, 2016.

4. Entitlement to an initial higher evaluation for the service-connected right leg radiculopathy.


REPRESENTATION

Appellant represented by: Virginia A. Girard-Brady, Attorney-at-Law


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

L.J. Bakke, Counsel


INTRODUCTION

The Veteran had honorable service with the U.S. Army from September 1970 to April 1972 and with the U.S. Navy from June 1974 to April 1977. A period of service from April 1977 to March 1979 has been determined to have been under other than honorable conditions and a bar to VA benefits related to that service interval.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New Orleans, Louisiana. 

A videoconference hearing was held in August 2008, before the undersigned. A transcript of that hearing is of record. 

The Board issued a decision in this case in December 2008, denying service connection for a genitourinary disorder, claimed as chronic cystitis, and for a low back disability to include degenerative joint disease of the lumbar spine and mechanical back pain. The Veteran appealed the Board's decision to the United States Court of Appeals for Veterans Claims (Court). In April 2010, the Court issued an Order remanding the case to the Board for development in compliance with instructions in a Joint Motion for Remand (JMR), as agreed between the parties.

In January 2011, the Board issued a remand for development consistent with the JMR. Following development, the case was returned to the Board, and the Board in August 2012 issued a decision again denying the claims for service connection for genitourinary and lower back disorders. The Veteran again appealed the Board's decision as to both issues, and in February 2014, the Court issued a Memorandum Decision vacating the Board's August 2012 decision as to both appealed issues and remanding the case for further development and readjudication.

In September 2014, the Board issued a remand for development consistent with the Court's Memorandum Decision. Following development, the RO readjudicated both claims.

Concerning the claim for service connection for lower back disability, the RO granted service connection for degenerative disc disease of the lumbar spine in a March 2016 rating decision, effective June 4, 2004, and evaluated the disability as 10 percent disabling prior to March 9, 2016, and 20 percent disabling beginning March 9, 2016. This is a full grant of benefits on appeal concerning the claim for service connection of a lower back disability. Accordingly, the issue of service connection for a back disability is no longer before the Board. In addition, the RO granted service connection for right leg radiculopathy, and evaluated the disability as 10 percent disabling, effective February 6, 2007.

In July 2016, the Veteran submitted a notice of disagreement as to the effective date and evaluations assigned the degenerative disc disease of the lumbar spine, and with the evaluation assigned the right leg radiculopathy. However, he has not yet been issued a statement of the case (SOC) as to these matters.

The issues of an effective date earlier than June 4, 2004 for service connection for degenerative disc disease of the lumbar spine; and for greater initial evaluations for degenerative disc disease of the lumbar spine prior to and beginning March 9, 2016, and for right leg radiculopathy are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

The claim for service connection for genitourinary disorder, to include chronic cystitis, is now again before the Board. 


FINDINGS OF FACT

1. Service treatment records show treatment for chronic cystitis with symptoms of dysuria and bacteria in the urine culture.

2. Post-service, the Veteran was treated for diagnoses of prostatitis and cystitis with symptoms of dysuria, urinary tract infections, and enlarged prostate with and without voiding difficulties.

3. The Veteran is a practical nurse and testified under oath that the genitourinary symptoms he manifests now-particularly bladder pain-are the same as those he experienced during active service and since then to the present.


CONCLUSION OF LAW

Resolving reasonable doubt in the Veteran's favor, the criteria for service connection for a genitourinary disorder including chronic cystitis and chronic prostatitis have been met. 38 U.S.C.A. § 1101, 1110, 1112 (West 2014); 38 C.F.R. § 3.102, 3.303, 3.304 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran seeks service connection for a genitourinary disorder, to include chronic cystitis. In statements submitted in 2004 and 2007 (see Statement of Vet, received July 12, 2004; and Substantive Appeal, received 4/10/2007), the Veteran stated he was first treated during active service for genitourinary symptoms ultimately diagnosed as chronic cystitis while on active service in the U.S. Army. He was treated intermittently for the same symptoms during subsequent active service in the U.S. Navy and after discharge to the present. Although the VA identified and treated the symptoms more recently as prostatitis, he stated they are the same as the symptoms he experienced during active service-particularly, the pain in his bladder. In October 2008, he testified as to this before the undersigned. (See Hearing Transcript, received 10/30/2008.) Upon questioning, the Veteran affirmed that the symptoms he now has are the same symptoms that he experienced during active service. (See Id., p. 3-11.)

Service treatment records reflect that the Veteran was initially seen in October 1971 with complaints of dysuria, pain and suprapubic tenderness. (See STRs 1970-72 inc labs, received 4/21/06, p. 3.) Laboratory results showed findings of bacterial infection, and the impression was of chronic cystitis. (See Id., p. 5.) A November 1971 entry shows the Veteran remained symptomatic with some dysuria, and that urine cultures continued to show bacteria present. In December 1971, the Veteran was referred to urology with an assessment of persistent dysuria. (See Id., p. 6.) In January 1972, he was found to be asymptomatic. (See Id., p. 8.) A 1974 hospital treatment summary shows a history of genitourinary tract infection with IVP. (See STRs, 1974-78, received 8/20/2013, p. 33.) The record shows that numerous urinalysis tests were taken throughout the duration of the Veteran's active service. The test results were not individually copied for the electronic record, and it cannot be determined how many positive versus negatives test results there were. Yet, the fact that the tests were conducted speaks to the physicians' belief that there was a need to conduct them (see STRs 1970-72 incl labs, received 4/21/06); see also STRs 1974-78, duty in DG, Guam (urinalysis, bacterial and other laboratory results reported individually within the STR entries, also as individual laboratory chits), received 8/20/13).

Post service VA and private treatment records reflect genitourinary complaints including dysuria and nocturia; findings of an enlarged prostate, hypertrophy with and without urinary obstruction, possible urinary tract infection, polyuria without dysuria, nocturia and neoplasm; and diagnoses of benign prostatic hypertrophy. (See, generally, VA TX rec (Alex) 8/04-4/06, received 6/16/2006; see also VA TX rec (Alex) 6/07-3/16, received 3/29/2016), pp. 489, 735, and generally.) A September 2001 VA report of examination for hypertension reflects that the Veteran had been diagnosed with chronic prostatitis. (See September 2001 VA Examination for Hypertension, p. 2.) In 2003, he was noted to have a history of prostatitis. (See VA tx rec (Alex) 7/03-6/04, received 6/22/2004, p. 27.) In 2006, he was prescribed the medication Terazosin for prostate/urination, later changed to Tamsulin. (See VA tx rec (Alex) 7/06-2/07, received in 2/26/2007, p. 4.); see also March 2012 DBQ Examination for GU & Back, p. 2.). VA treatment records as late as 2012 reflect that he continues to be prescribed Tarasozin. In November 2015, the Veteran submitted documents including a September 2015 private treatment record that shows he was diagnosed with a urinary tract infection for which he was prescribed an antibiotic. (See VA cont of care doc 2013-14 + 9/15 dx cystitis, received 11/16/2015, p. 16.) The entry notes that the condition is also called cystitis. Another group of documents received at the same time further reveal copies of transcripts and a diploma showing that the Veteran had graduated in December 2003 with a degree in practical nursing. (See Vet's diploma: PNurse, received 11/16/2015.)

VA DBQ examination for genitourinary disorders conducted in March 2012 shows the Veteran was diagnosed with benign prostate hypertrophy with lower urinary tract symptoms. As to the etiology of the diagnosed condition, the examiner, a nurse practitioner, opined that it was not related to the manifestations of genitourinary symptoms the Veteran experienced during active service. The examiner's rationale was that the Veteran was treated during active service for infections and inflammatory genitourinary disorders consistent with prostatitis. But there was no evidence of current or chronic cystitis, prostatitis, or other urinary tract infection disorder on current examination. Those urinary tract symptoms currently found, the examiner explained, were consistent with a diagnosis of benign prostate hypertrophy; and there is no causal relationship been benign prostate hypertrophy and prostatitis per medical literature review. (See March 2012 DBQ Examination for GU & Back, p. 23.)

In September 2015, the Board received an addendum to the March 2012 DBQ opinion, which had been requested pursuant to Court order and JMR, as noted above, in the Introduction. (See DBQ Addendum to 2012 VA GU, received 9/22/2015, p. 2-3.) Another examiner, an advanced practice registered nurse conducted a review of the record and opined that it was less likely as not that the Veteran's currently diagnosed benign prostatic hypertrophy was related to the genitourinary conditions he experienced during active service including dysuria, recurring urinary tract infections, and gonorrhea or a gonorrhea-like condition. The examiner explained that benign prostatic hypertrophy did not cause bacteria or white blood cells in the urine, as laboratory findings showed the Veteran exhibited during active service. In addition, the examiner clarified that benign prostatic hypertrophy is an enlargement of the prostate gland that causes symptoms of obstructive voiding. It is not caused by sexually transmitted diseases, nor is penile discharge a symptom of the condition. However, the examiner continued, prostatic growth is believed to begin at approximately age 30 years. An estimated 50 percent of men have histologic evidence of benign prostate hypertrophy by age 50; and 75 percent, by age 80. Therefore, the examiner concluded, it is at least as likely as not that the Veteran's benign prostate hypertrophy was age-related. The Board notes that the examiner's stated review of the record is exhaustive, covering service treatment records from the Veteran's active and National Guard service and post-service treatment records beginning in 1995 through 2011.

In March 2016, the Veteran underwent additional VA DBQ examinations for urinary tract and reproductive system conditions, as directed by subsequent Court order. These examinations show findings of voiding dysfunction due to benign prostate hypertrophy and a history of one to two urinary tract infections with unknown etiology. (See March 2016 DBQ VA Examination for Male Reproductive System Conditions and DBQ VA Examination for Urinary Tract Conditions.) The examiner, a family nurse practitioner with board certification, diagnosed benign prostate hypertrophy and opined that it was less likely than not that the condition was related to military service because, in part, current clinical medical evidence did not confirm the presence of the diagnosis. Rather, recent cystoscopy results showed a normal prostate. Moreover, the examiner explained, medical literature did not indicate a causal or direct relationship between benign prostate hypertrophy and the symptoms the Veteran experienced during active service including dysuria and recurring urinary tract infections. Rather, the pathogenesis of benign prostate hypertrophy indicates that older age and the presence of functioning Leydig cells of the testes are essential for the development of benign prostate hypertrophy. Thus, the examiner explained, the condition is very rare in hypo gonadal men with onset before the age of 40. In a small percentage of men, the examiner observed, untreated benign prostate hypertrophy can cause recurrent urinary tract infections. However, in the Veteran's case, the examiner explained service treatment records reflect he was treated for such complaints in 1971 but not following and, at present time, he was not diagnosed with benign prostate hypertrophy-which, records show, was first diagnosed in 2006.

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. The Board is charged with the duty to assess the credibility and weight given to evidence. Wensch v. Principi, 15 Vet. App. 362, 367 (2001); Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). In weighing credibility, VA may consider interest, bias, inconsistent statements, consistency and inconsistency, and demeanor of the witness. Caluza v. Brown, 7 Vet. App. 498 (1995). The Board may weigh the absence of contemporaneous medical evidence against the lay evidence in determining credibility, but the Board cannot determine that lay evidence lacks credibility merely because it is unaccompanied by contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006).

After careful review of all of the evidence in the Veteran's claims file, the Board finds the evidence supports a grant of service connection for a genitourinary disorder to include chronic cystitis and chronic prostatitis. 

Service treatment records clearly show that the Veteran complained of and was treated for a genitourinary disorder in service characterized by dysuria, urethral discharge, and laboratory findings of bacterial infection. He was then assessed with urinary tract infection, persistent dysuria, and chronic cystitis. Thereafter, records establish a diagnosis of prostatitis in 2001, a history of prostatitis in 2003, that he was prescribed terazosin for prostate/urination in 2006, and that he was diagnosed with cystitis in 2015. 

In summary, the VA opinions from March 2012, September 2015, and March 2016 found no etiological link between the Veteran's present genitourinary disorder and any genitourinary symptoms or disorder he exhibited during active service. In 2012 and 2015, the opinions were largely based on a finding that the Veteran did not exhibit a genitourinary condition other than benign prostate hypertrophy. As for the diagnosed benign prostate hypertrophy, the examiners asserted in 2012 and 2015 that the medical literature did not support an etiological link between that condition and prostatitis, or between it and any of the other inservice genitourinary symptoms the Veteran experienced including dysuria, recurring urinary tract infections and urethral discharge. The September 2015 examiner further explained that benign prostatic hypertrophy did not cause bacteria or white blood cells in the urine. The March 2016 examiner noted that older age and the presence of functioning Leydig cells were essential to the development of benign prostate hypertrophy. At the time of the March 2016 examination, the examiner found no genitourinary condition, including benign prostate hypertrophy. Clinical findings did not confirm the diagnosis of benign prostate hypertrophy, the examiner noted, and the first evidence of benign prostate hypertrophy was many years after service, in 2006.

Notwithstanding, these medical opinions did not consider the Veteran's recent diagnosis of cystitis. Nor, it appears, did they consider manifestation of an enlarged prostate in conjunction with a condition other than benign prostate hypertrophy accompanied by a voiding disorder. Because the examiners either did not have or did not consider all the medical evidence in this case including, mostly importantly the Veteran's current diagnoses, the weight of these opinions is greatly lessened. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993); see also Guerrieri v. Brown, 4 Vet. App 467, 470-71 (1993) and Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994). 

The Veteran has stated the symptoms of his current genitourinary condition are the same as those that he felt during active service, particularly the pain in his bladder. Moreover, as noted above, he testified as to this under oath. The Veteran is competent to describe that the pain and other genitourinary symptoms he experiences now are the same as those he experienced during active service and, following discharge, through to the present. See Layno, supra. Moreover, the Board finds his testimony to be credible. His statements and testimony are consistent, and consistent with the record. Here, the Board considers also the numerous urinalysis lab result slips in the service treatment records. As noted before, it is not possible to read the results themselves, as the electronic record does not contain the individual slips. Rather, the scanned page shows a stack of laboratory slips. Concerning this evidence in the light most favorable to the Veteran, the Board observes that the mere presence of the many urinalysis results reflect that the physicians needed to conduct the tests. This is both consistent with the Veteran's testimony and report, and also weighs in his favor. 

Furthermore, in this case, the Veteran also has training and expertise as a practical nurse. The Board acknowledges the greater probative weight this lends the Veteran's statements and testimony-particularly as to the identification of his symptomatology and understanding its probable causes. 

The Veteran asserts that cystitis and prostatitis are related conditions. In his substantive appeal, he stated that the conditions are directly related. While the Veteran has medical training, he is not a physician. Nor has he argued he has the medical expertise to provide such an opinion. 

However, the Board notes that Dorland's Illustrated Medical Dictionary does pose a relationship between prostatitis and urinary tract infections. Prostatitis is defined as "inflammation of the prostate," and bacterial prostatitis is a kind of prostatitis "caused by bacterial infection, usually from a urinary tract infection, with bacteriuria." See Dorland's Illustrated Medical Dictionary, 1530 (32nd ed. 2012). Chronic bacterial prostatitis is a "mild condition caused by recurrent urinary tract infections with bacteriuria and variable other symptoms such as pain and dysuria ..." Id. Cystitis, which private treatment records in September 2015 equated with urinary tract infections, is defined by Dorland's as an "inflammation of the urinary bladder." See Dorland's, 463. Bacterial cystitis is a "bacterial infection of the bladder." Id. 

The Board observes that the Veteran was diagnosed with cystitis on active service and with both prostatitis (2001) and cystitis (2015) after service. 

Given that the 2012, 2015, and 2016 VA DBQ medical opinions lacked consideration of the crucial September 2015 private medical evidence reflecting that the Veteran had been diagnosed with cystitis, they cannot be probative in this case. This leaves the medical treatment records and the assertions of the Veteran. It is unknown how long the Veteran practiced as a practical nurse. He stated in 2015 that he no longer practiced as a licensed practical nurse and hadn't had a license for two to three years. (See Vet's statmt: no longer works ..., received 11/16/15). Notwithstanding, he has a degree and education equal to at least one of the three examiners who offered opinions in this case.

The medical evidence is therefore at the least in equipoise. The medical evidence shows that the Veteran was treated for chronic cystitis with symptoms of dysuria and urinary tract infections during active service. Post-service, he was treated for prostatitis and cystitis-including with prescription medications-with symptoms of dysuria, enlargement of the prostate without, as well as with, voiding difficulty, and urinary tract infections. The Board finds credible and probative the Veteran's testimony and statements that the symptoms he has experienced post service to the present are the same that he experienced during active service.

Given the foregoing, service connection for a genitourinary disorder including chronic cystitis and chronic prostatitis is appropriate. See 38 C.F.R. § 3.102.

Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence of record. Indeed, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that the Board must review the entire record, but does not have to discuss each piece of evidence. Gonzalez v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Therefore, the Board has summarized the relevant evidence where appropriate. 

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations imposes obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. § 5102, 5103, 5103A, 5107, 5126 (2014); 38 C.F.R. § 3.102, 3.156(a), 3.159, 3.326(a) (2016). Given the full grant of benefits sought on appeal, no conceivable prejudice to the Veteran could result from this decision; therefore, no discussion of compliance with the VCAA is necessary. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

ORDER

Service connection for a genitourinary disorder to include chronic cystitis and chronic prostatitis is granted.


REMAND

Additionally, and as noted above, the Veteran has submitted a notice of disagreement to the effective date and evaluations assigned the now service-connected degenerative disc disease of the lumbar spine and right leg radiculopathy. He has thus initiated an appeal as to these issues. See Manlincon v. West, 12 Vet. App. 238 (1999). 

The next step in the appellate process is for the RO to issue to the Veteran and the Veteran's representative a statement of the case addressing these matters. See 38 C.F.R. § 19.29 (2016); Manlincon, supra, 12 Vet. West, at 240-41. Consequently, this matter must be remanded to the RO for the issuance of a statement of the case. The Board emphasizes, however, that to obtain appellate review of an issue not currently in appellate status; a perfected appeal must be filed. See 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. § 20.200, 20.201, 20.202 (2016). 

Accordingly, the case is REMANDED for the following action:

The Veteran and his representative must be provided a Statement of the Case addressing the Veteran's claim for an earlier effective date and evaluations assigned his now service-connected degenerative disc disease of the lumbar spine, and for the evaluation assigned his now service connected right leg radiculopathy. If and only if, the Veteran files a timely substantive appeal should these issues be returned to the Board. See 38 C.F.R. § 19.29; Manlincon, 12 Vet. App. 238.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
L.M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs