﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 191122-44661
DATE: September 30, 2020

ORDER

Service connection for psoriasis, based on secondary aggravation by service-connected posttraumatic stress disorder (PTSD), is granted.

FINDING OF FACT

The probative evidence of record is at least in relative equipoise as to whether the Veteran’s psoriasis is aggravated by his service-connected PTSD. 

CONCLUSION OF LAW

The criteria for service connection for psoriasis based on secondary aggravation by service-connected PTSD have been met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.303(a), 3.310.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty in the United States Navy from January 1984 to January 1986.

On August 23, 2017, the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in various sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA), was signed into law. This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. This decision has been written consistent with the new AMA framework.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from rating decisions from the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida, most recently in November 2019. Here, the Veteran timely submitted a VA Form 10182 (Notice of Disagreement) in November 2019 and requested direct review by the Board. Based on the appellant’s choice to pursue a direct review of his appeal, the Board will decide the appeal based on the evidence of record at the time of the prior decision. No evidence submitted after that date may be considered. 

Preliminarily, the Board notes some harmless procedural irregularities. In February 2019, the Veteran submitted his election to participate in the Rapid Appeals Modernization Program to appeal a January 2019 rating decision by the RO. After the AMA became effective on February 19, 2019, the Veteran timely submitted a notice of disagreement in March 2019 and elected a direct review by the Board. In May 2019, the Veteran withdrew his notice of disagreement and submitted a supplemental claim for service connection for psoriasis secondary to his service-connected PTSD. The RO denied the supplemental claim in a June 2019 rating decision. The June rating decision included conflicting statements that new and relevant evidence had and had not been received. In July 2019, the Veteran timely sought higher-level review. In August 2019, the RO mistakenly issued a letter to the Veteran stating that the June 2019 rating decision was a higher-level review decision and the Veteran could not seek higher-level review of a higher-level review decision. Nevertheless, the RO proceeded with the higher-level review and issued its November 2019 decision. In addition, this matter is being granted in full pursuant to this decision. Therefore, the Board finds that there was no prejudice to the Veteran.

1. Service connection for psoriasis secondary to service-connected PTSD

The Veteran contends that his currently-diagnosed psoriasis is caused by his service-connected PTSD. He asserts that while his PTSD may have been diagnosed after his psoriasis first appeared, his actual PTSD symptoms occurred at the same time that his psoriasis began appearing.

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of:(1) a current disability; (2) in-service incurrence or of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Prinicipi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Service connection also may be established on a secondary basis for: (1) a disability that is proximately due to or the result of a service-connected disease or injury; or, (2) any increase in the severity of a nonservice-connected disease or injury that is proximately due to or the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disease or injury. 38 C.F.R. §§ 3.310 (a)-(b).

In Frost v. Shulkin, the United States Court of Appeals for Veterans Claims (Court) held that “for a veteran to receive secondary service connection on a causation basis under § 3.310(a), the primary disability need not be service connected, or even diagnosed, at the time the secondary condition is incurred.” See Frost v. Shulkin, 29 Vet. App. 131, 138 (2017).

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 53-54 (1990).

Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. Competent medical evidence may also include statements conveying sound medical principles found in medical treatises and statements contained in authoritative writings, such as medical and scientific articles and research reports or analyses. 38 C.F.R. § 3.159(a)(1).

In an August 2014 rating decision, the Veteran was service connected for PTSD with a 30 percent rating effective from April 8, 2013.

The Veteran does not contend, and the medical evidence of record does not support, that his psoriasis was caused by an in-service event. The Veteran’s service treatment records show no treatment or diagnosis related to psoriasis. Likewise, his entrance and separation examinations do not mention a skin disorder. Thus, the Board will address the question of whether the Veteran’s psoriasis is secondary to his service-connected PTSD, to include whether the Veteran’s psoriasis is caused by or aggravated by his service-connected PTSD. See Robinson v. Shinseki, 557 F.3d 1355, 1361 (2008) (claims which have no support in the record need not be considered by the Board as the Board is not obligated to consider “all possible” substantive theories of recovery. Where a fully developed record is presented to the Board with no evidentiary support for a particular theory of recovery, there is no reason for the Board to address or consider such a theory). On this question, the evidence of record weighs both in favor and against the claim.

The Veteran provided a May 2017 report from a private dermatologist, Dr. B., who states that “[p]hysical and mental stress including PTSD can induce or exacerbate a psoriatic flare.” Dr. B. submitted a nexus statement in July 2017 that the Veteran’s psoriasis was caused by or a result of PTSD and as most likely caused by or a result of PTSD. As rationale, he stated that “[p]soriasis is exacerbated by stress, including physical, emotional & psychological. PTSD and its associated stresses contribute to psoriatic flares.” 

The Veteran was afforded a VA compensation and pension examination in July 2017 in which the examiner opined that the Veteran’s psoriasis was less likely than not related to his service-connected PTSD. The opinion was primarily based on the timing of the Veteran’s first outbreak of psoriasis in May 2010 and VA treatment records that stated that the Veteran worked on the BP oil spill in 2010. That opinion was the basis for an August 2017 rating decision denying the Veteran’s claim for service connection for psoriasis. The Veteran timely submitted a new claim for service connection for psoriasis and provided a statement with documentation from his employer clarifying that he did not work directly on the BP oil spill. He “only handled recruiting and administrative tasks. At no time did [he] do any actual work on cleaning up the beaches.” 

A September 2017 compensation and pension examination resulted in a positive nexus opinion. The examiner stated: “Current severity of the service-connected CONDITION warrants by proximity, association of the claimed secondary CONDITION. The disorder began subsequent to the service-connected condition and is the direct result of the antecedent condition. The medical literature supports this. A nexus is established.” In October 2017, the VA requested an addendum opinion because the examiner’s rationale was based on the mistake that the Veteran’s psoriasis, which was first diagnosed in 2010, developed after the service-connected PTSD was diagnosed in 2014. 

In November 2017, a psychiatrist, Dr. P., examined the Veteran’s claims file. In his addendum opinion, Dr. P. did not answer the question of whether the Veteran’s condition was caused by his service-connected PTSD. As to aggravation, Dr. P. stated that PTSD is not an established etiology of psoriasis. He opined that “[w]hile stress can cause acute flares of psoriasis it is very difficult to prove based off of the information presented in the C-file that stress associated with psoriasis chronically (beyond natural progression) given that psoriasis often worsens on its own without exacerbating factors.” 

In a March 2018 addendum opinion requested by the VA, P.M., a Physician’s Assistant, opined that the Veteran’s psoriasis was less likely than not secondary to his PTSD because the diagnosis occurred prior to his diagnosed PTSD. P.M. stated that psoriasis flares can be exacerbated by stress. The examiner then noted the spread of psoriasis from when the Veteran was first treated for psoriasis to the present and concluded that the Veteran’s psoriasis was at least as likely as not aggravated beyond its normal progression by his service-connected PTSD.

The VA requested another addendum medical opinion which was provided in November 2018 by Dr. M., a psychiatrist who reviewed the record. Dr. M. opined that it was less likely as not that the Veteran’s psoriasis was caused by or secondary to his service-connected PTSD because PTSD is not a recognized cause of psoriasis. He stated that “a review and meta-analysis of studies evaluating the relationship between antecedent psychologic stress and onset or exacerbation of psoriasis found insufficient data to confirm an association.” As to aggravation, he stated that “[t]he medical expertise does not currently exist to predict the progression of psoriasis in an individual.”

With respect to a nexus between the Veteran’s psoriasis and his service-connected PTSD, the Board notes that the record contains conflicting medical opinions. The Court has stated that the probative value of medical opinion is based on the expert’s personal examination of the patient, the physician’s knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches. Further, the credibility and weight to be attached to these opinions are within the province of the adjudicator. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). As such, the Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995); Wensch v. Principi, 15 Vet. App. 362, 367 (2001).

In favor of finding a nexus are the May and August 2017 opinions of the Veteran’s dermatologist and the March 2018 VA examiner. The Board notes that the Veteran’s dermatologist personally examined the Veteran and knew his medical history and gives this relationship strong probative value. In addition, the March 2018 VA examiner found it likely that the Veteran’s psoriasis was at least as likely as not aggravated by his service-connected PTSD and that “[p]soriasis flares can be exacerbated by stress.” 

The VA’s third addendum opinion from Dr. M. in November 2018 is more detailed than the dermatologist’s opinion, yet it relies on blanket statements about psoriasis and PTSD. The report states that genetic predisposition clearly plays a role in the development of psoriasis. However, according to the Veteran’s medical history listed in the report, the Veteran’s family and social history were noncontributory to his psoriasis. The report also lists infections and tobacco, drug, and alcohol use as risk factors for the development or exacerbation of psoriasis. The Veteran’s treatment records, however, note that he does not use tobacco, drugs, or alcohol. The only treatments for infections are antibiotics prescribed as part of his treatment for psoriasis. As to stress, Dr. M., who did not personally examine the Veteran, based his negative opinions as to causation and aggravation on a review of medical literature that concluded that the studies of “the relationship between psychologic stress and onset or exacerbation of psoriasis […] were primarily retrospective, had significant limitations, and yielded conflicting results.” Dr. M. merely pasted the excerpt from the literature summary and did not address the nature of the conflicting studies. See McCray v. Wilkie, 31 Vet. App. 243 (2018). The Board also notes that in his negative November 2017 VA opinion, Dr. P. asserted that stress can cause acute flares of psoriasis. Therefore, the Board affords less probative weight to Dr. M.’s opinion. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008) (the probative value of a medical opinion is derived from a factually accurate, fully articulated, and soundly-reasoned opinion).

Finally, the Board gives little weight to the July, September, and November 2017 opinions due to the defects mentioned earlier. The July 2017 opinion was based on the examiner’s mistake about the nature of the Veteran’s work on the BP oil spill. The September 2017 medical opinion was based on the examiner’s mistaken belief that the Veteran’s condition began after his service-connected PTSD was diagnosed. Therefore, we give these VA examinations no probative weight, as they are based on incorrect fact patterns. See Reonal v. Brown, 5 Vet. App. 458 (1993). As to the November 2017 opinion, the Veteran’s representative objected to this report because, while Dr. P. checked a box on the Disability Benefits Questionnaire that he conducted an in-person examination, the Veteran had not been examined by Dr. P. who was based in Maryland, while the Veteran resided in Florida. Furthermore, Dr. P. provided little rationale to support his conclusions. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008).

Upon careful review of the evidence of record, the Board finds that the positive and negative evidence regarding the Veteran’s claim for service connection for psoriasis secondary to PTSD is at least in relative equipoise. Resolving all reasonable doubt in the Veteran’s favor, the Board finds that his psoriasis is aggravated by his service-connected PTSD. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. Accordingly, the Board concludes that service connection for psoriasis is warranted on a secondary aggravation basis. The claim is granted.

The Board notes that 38 C.F.R. § 3.310(b) contemplates a baseline to assess the severity of a nonservice-connected disability that is aggravated by a service-connected disability. However, the Board determines that this is more akin to a downstream rating aspect of the claim that should be addressed in the first instance by the RO following implementation of the instant decision.

 

 

R. FEINBERG

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board James Morgan, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.