Citation Nr: 1761206 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 13-12 300 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to an evaluation in excess of 10 percent prior to October 1, 2015, and in excess of 20 percent thereafter, for degenerative arthritis of the lumbar spine and lumbar stenosis L3-4, L4-5, and L5-S1 status post decompression with interbody fusion (previously rated as degenerative disc disease and lumbosacral strain) (hereinafter "lumbar spine disability").

2. Entitlement to a separate compensable evaluation prior to October 1, 2015, and in excess of 10 percent thereafter, for radiculopathy of the right leg sciatic nerve. 

3. Entitlement to a separate compensable evaluation prior to October 1, 2015, and in excess of 10 percent thereafter, for residual of motor and sensory deficits of the left leg sciatic nerve. 

4. Entitlement to a separate compensable evaluation prior to October 1, 2015, and in excess of 10 percent thereafter, for radiculopathy of the right leg femoral nerve. 

5. Entitlement to a separate compensable evaluation prior to October 1, 2015, and in excess of 10 percent thereafter, for radiculopathy of the left leg femoral nerve. 


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Rachel E. Jensen, Associate Counsel


INTRODUCTION

The Veteran served on active duty from May 1972 to November 1975 and from January 1981 to June 1987. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. The RO continued a 10 percent disabling rating for degenerative disc disease of the lumbar spine (previously rated as lumbosacral strain). The RO additionally continued a 10 percent disabling rating for chronic obstructive pulmonary disease (COPD) and denied service connection for a right hand condition. The Veteran perfected an appeal as to all three issues. See March 2013 VA Form 9. In March 2014, prior to the matters being certified to the Board, the Veteran withdrew the issues pertaining to COPD and a right hand condition. Consequently, they are no longer in appeal status. 

In March 2016, the RO granted a 20 percent rating for degenerative arthritis of the lumbar spine and lumbar stenosis L3-4, L4-5, and L5-S1 status post decompression with interbody fusion (previously rated as degenerative disc disease and lumbosacral strain) effective from October 1, 2015. The claim has been recharacterized as it appears on the cover page of the instant decision and remains in controversy as less than the maximum benefit available was awarded. See AB v. Brown, 6 Vet. App. 35 (1993).

In March 2016, the RO additionally granted separate 10 percent ratings for radiculopathy of the left leg femoral nerve, radiculopathy of the right leg femoral nerve, radiculopathy of the right leg sciatic nerve, and residual of motor and sensory deficits of the left leg sciatic nerve. As this is the type of neurological impairment contemplated by 38 C.F.R. § 4.71a, Diagnostic Codes 5235-5243, they are part and parcel of the lumbar spine disability on appeal. 

These matters were previously before the Board in July 2017, at which time they were remanded to provide the Veteran a hearing. In October 2017, the Veteran testified at a hearing before the undersigned Veterans Law Judge. A copy of the transcript has been associated with the claims file.


FINDINGS OF FACT

1. The Veteran submitted a claim for an increased rating for his lumbar spine disability and residuals that was received February 5, 2010.

2. Resolving all doubt in the Veteran's favor, the preponderance of the evidence indicates that the Veteran's lumbar spine disability more closely approximated a 20 percent evaluation from February 5, 2010. 

3. Resolving all doubt in the Veteran's favor, the preponderance of the evidence indicates that the Veteran exhibited mild radiculopathy symptoms in the bilateral lower extremities from February 5, 2010.


CONCLUSIONS OF LAW

1. The criteria for a rating of 20 percent, but no higher, for lumbar spine disability have been met from February 5, 2010. 38 U.S.C. § 1155, 5103, 5103A, 5107(b) (2012); 38 C.F.R. 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5237 (2017).

2. The criteria for a rating of 10 percent, but no higher, for radiculopathy of the right leg sciatic nerve have been met from February 5, 2010. 38 U.S.C. § 1155, 5103, 5103A, 5107(b); 38 C.F.R. 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.124a, DC 8626 (2017).

3. The criteria for a rating of 10 percent, but no higher, for residual of motor and sensory deficits of the left leg sciatic nerve have been met from February 5, 2010. 38 U.S.C. § 1155, 5103, 5103A, 5107(b); 38 C.F.R. 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.124a, DC 8720 (2017).

4. The criteria for a rating of 10 percent, but no higher, for radiculopathy of the right leg femoral nerve have been met from February 5, 2010. 38 U.S.C. § 1155, 5103, 5103A, 5107(b); 38 C.F.R. 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.124a, DC 8720.

5. The criteria for a rating of 10 percent, but no higher, for radiculopathy of the left leg femoral nerve have been met from February 5, 2010. 38 U.S.C. § 1155, 5103, 5103A, 5107(b); 38 C.F.R. 3.102, 3.321, 4.1, 4.2, 4.3, 4.7, 4.10, 4.124a, DC 8726 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Neither the Veteran nor his representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

I. Legal Criteria

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4 (2017). Each disability must be viewed in relation to its history, and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. 

Examination reports are to be interpreted in light of the whole recorded history of the disability, and each disability must be considered from the point of view of the Veteran working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, consideration must be given as to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. See Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007).

In general, all disabilities, including those arising from a single disease entity, are rated separately, and all disability ratings are then combined in accordance with 38 C.F.R. § 4.25 (2017). Pyramiding, the evaluation of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a Veteran's service-connected disabilities. 38 C.F.R. § 4.14 (2017). It is possible for a Veteran to have separate and distinct manifestations from the same injury which would permit rating under several diagnostic codes, however, the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

In making all determinations, the Board must fully consider the Veteran's assertions of record. A layperson is competent to report on the onset and degree of his recurrent symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). The Board is charged with the duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), cert. denied, 523 U.S. 1046 (1998); Wensch v. Principi, 15 Vet. App. 362, 367 (2001). As a finder of fact, when considering whether lay evidence is satisfactory, the Board may properly consider internal inconsistencies in statements, consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996).

The Veteran's service-connected lumbar spine disability is rated as noncompensable from July 1, 1987, and is rated at 10 percent disabling from December 21, 1992, to October 1, 2015, under DC 5243. His lumbar spine disability is rated 20 percent disabling from October 1, 2015, under DC 5237. 

Disabilities of the spine are rated under the General Rating Formula for Diseases and Injuries of the Spine (for Diagnostic Codes 5235 to 5243, unless 5243 is evaluated under the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes). Ratings under the General Rating Formula are made with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease.

The General Rating Formula provides for assignment of a 10 percent rating where forward flexion of the thoracolumbar spine is greater than 60 degrees but not greater than 85 degrees; or a combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral fracture with loss of 50 percent or more of the height. 

A 20 percent rating is warranted where forward flexion of the thoracolumbar spine is greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or muscle spasm or guarding is severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 40 percent rating requires forward flexion of the thoracolumbar spine of 30 degrees or less, or favorable ankylosis of the entire thoracolumbar spine. 

A 50 percent rating requires unfavorable ankylosis of the entire thoracolumbar spine.

An 100 percent rating requires unfavorable ankylosis of the entire spine. 

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion is zero to 30 degrees, and left and right lateral rotation is zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. See 38 C.F.R. § 4.71a, General Rating Formula for Diseases and Injuries of the Spine at Note (2); see also 38 C.F.R. § 4.71a, Plate V.

For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents favorable ankylosis. Id. at Note (5).

The Notes following the General Rating Formula for Diseases and Injuries of the Spine provide further guidance for rating diseases or injuries of the spine. Note (1) provides that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be rated separately under an appropriate diagnostic code. 

Alternatively, disability involving disc disease may be rated under the Formula for Rating IVDS Based on Incapacitating Episodes. That formula provides a 10 percent disability rating for incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months; a 20 percent disability rating for incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months; a 40 percent disability rating for incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months; and a 60 percent disability rating for intervertebral disc syndrome with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a. 

An incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Id. at Note (1).

When rating disabilities of the joints, the degree of actual functional impairment must be considered. Factors such as pain, fatigue, lack of endurance, incoordination, and weakness are evaluated to determine the functional impact on the involved joint, particularly with repeated movements. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, (1995).

In determining if a higher rating is warranted based on greater limitation of motion due to pain on use, including use during flare-ups, pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2012). Similarly, painful motion alone does not constitute limited motion for rating under diagnostic codes pertaining to limitation of motion. Id. Pain may result in functional loss, however, if it limits the ability to perform normal movements with normal excursion, strength, speed, coordination, or endurance, as provided in 38 C.F.R. §§ 4.40 and 4.45. Id. 

The Veteran is service-connected for radiculopathy of the right leg sciatic nerve at 10 percent disabling under 38 C.F.R. § 4.124a, DC 8626. He is service-connected for left leg sciatic nerve and right leg femoral nerve radiculopathy under 38 C.F.R. § 4.124a, DC 8720. He is also service-connected for left leg femoral nerve radiculopathy under 38 C.F.R. § 4.124a, DC 8726. 

DCs 8520, 8620, and 8720 provide ratings for paralysis, neuritis, and neuralgia of the sciatic nerve. DC 8526, 8626, and 8726 provide ratings for paralysis, neuritis, and neuralgia of the femoral nerve. Neuritis and neuralgia are rated as incomplete paralysis. Neuritis, cranial or peripheral, characterized by loss of reflexes, muscle atrophy, sensory disturbances, and constant pain, at times excruciating, is to be rated on the scale provided for injury of the nerve involved, with a maximum equal to severe, incomplete, paralysis. The maximum rating which may be assigned for neuritis not characterized by organic changes referred to in this section will be that for moderate, or with sciatic nerve involvement, for moderately severe, incomplete paralysis. 38 C.F.R. § 4.123 (2017). Neuralgia, cranial or peripheral, characterized usually by a dull and intermittent pain, of typical distribution so as to identify the nerve, is to be rated on the same scale, with a maximum equal to moderate incomplete paralysis. Tic douloureux, or trifacial neuralgia, may be rated up to complete paralysis of the affected nerve. 38 C.F.R. § 4.124. 

Disability ratings of 10, 20, and 40 percent are warranted, respectively, for mild, moderate, and moderately severe incomplete paralysis of the sciatic nerve. A disability rating of 60 percent is warranted for severe incomplete paralysis with marked muscle atrophy. An 80 percent rating is warranted with complete paralysis of the sciatic nerve. Id.

Disability ratings of 10, 20, and 30 percent are warranted, respectively, for mild, moderate, and severe incomplete paralysis of the femoral nerve. A disability rating of 40 percent is warranted for complete paralysis of the femoral nerve. Id.

In rating diseases of the peripheral nerves, the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type of picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, or at most, the moderate degree. Id.

Words such as "severe," "moderate," and "mild" are not defined in the Rating Schedule. Rather than applying a mechanical formula, VA must evaluate all evidence, to the end that decisions will be equitable and just. 38 C.F.R. § 4.6 (2017). Although the use of similar terminology by medical professionals should be considered, it is not dispositive of an issue. Instead, all evidence must be evaluated in arriving at a decision regarding a request for an increased disability rating. 38 U.S.C. § 7104 (2012); 38 C.F.R. §§ 4.2, 4.6.

II. Analysis

The Veteran has testified that following his February 5, 2010, claim for an increased rating, he was afforded a March 2010 VA spine examination that did not fully take account of his private medical history and did not appropriately capture the extent of his disability. Lay statements and medical evidence that were part of the record at the time of the examination reported chronic lumbar pain and pain radiating to his lower extremities, more severely on the left side than the right. Largely as a result of the examination findings, he was denied an increased rating until an October 2015 VA examination and subsequent rating decision.

At the March 2010 examination, the examiner noted normal gait and posture and no evidence of muscle spasm. Forward flexion was to 90 degrees and combined range of motion was to 240 degrees. The Veteran reported chronic, constant low-grade lumbar pain and L5 radicular numbness in the left leg which varied in severity. The examiner stated there was no indication of lower extremity radicular pain, though there were radicular sensory sensations on the left in the L5 dermatome and numbness in the lateral aspect of the thigh, the anterior aspect of the lower leg, and the dorsum of the foot. He found no indication of radicular symptoms on the right. X-ray examination revealed some degenerative change of the lumbar spine, small osteophytes in the lumbovertebral bodies, some narrowing of the intervertebral spaces in L3 to L4 and L4 to L5, and spondylolysis of L5 on the left side.

The Veteran testified at the October 2017 hearing that he had submitted releases to VA for his private medical records and had also brought with him to the March 2010 examination his latest x-ray results. Private treatment records were subsequently associated with the claims file that detailed the Veteran's April 2012 diagnosis of disc herniation and spinal cord compression, leading to a May 2012 decompression and fusion reconstruction surgery. The Veteran had decreased range of motion, with forward flexion limited to the mid-tibias. Extension beyond neutral was painful. Decreased range of motion in side-bending and twisting, especially to the left was demonstrated. There was also left-sided paraspinal tenderness. The Veteran exhibited significant weakness in his left ankle and toe dorsiflexor. The private clinician diagnosed lumbar degenerative scoliosis, severe L4 and L5 radiculopathy with numbness and weakness on the left side, and right-sided collapse at L4 to L5 with history of decompression. 

Another VA examination was conducted in October 2015 which revealed forward flexion to 65 degrees and combined range of motion to 185 degrees, with pain noted on all ranges of motion and upon weight-bearing. Muscle spasm and localized tenderness resulting in abnormal gait or contour were observed. The Veteran reported numbness and burning sensation of the left leg and foot. Sensation was absent in the left upper anterior thigh and decreased in the left thigh/knee, lower leg/ankle, and foot/toes. Mild radiculopathy was indicated with involvement of the bilateral femoral nerves and bilateral sciatic nerves, which the examiner determined were more likely than not to be permanent. X-ray examination revealed very mild, unchanged dextroscoliosis, pedicle screws from L3 to S1 without hardware loosening, narrowing of L3-4, L4-5 disc spaces with anterior osteophytes, and facet hypertrophy L4-5 and L5-S1.

Because of the scoliosis diagnoses in the record, an addendum opinion was obtained in March 2016. The clinician stated that although the Veteran has congenital scoliosis, it is a diagnosis too mild to cause symptoms or degeneration. He was not operated on for the scoliosis or any condition due to the scoliosis. 

At the October 2017 hearing, the Veteran asserted that the March 2010 examination was inadequate because the examination report did not reflect the records the Veteran provided to the examiner. He also testified that at the time of the 2010 examination, he had a considerate amount of pain and discomfort and his left leg was dragging as he walked. Because he had undergone previous surgeries and treatment, he was familiar with the type of evaluations done in a spine examination and also evaluations of nerve issues. He reported that the types of examinations on the legs, ankles, and toes that were done by his private physician and by the October 2015 VA examiner were not conducted by the March 2010 examiner. The Veteran also recollected that he experienced nerve pain down the back side of both his legs, but the left was considerably more severe and thus was more of a focus. He reported suffering from severe back spasms in 2010, as well. The Veteran stated that the May 2012 surgery helped with his alignment, but the radiculopathy continues; he was told by his physician that this was due to permanent nerve damage. He stated that he had recently been on his hands and knees in a flower bed pulling weeds and his left leg was covered in fire ants, but he could not feel them. He suffered many fire ant bites because he did not have any sensation in his leg.

The Board finds the Veteran's statements regarding the nature and extent of his injuries prior to October 1, 2015, to be competent, credible, and probative. He has consistently described the limitations he experienced due to his lumbar spine disability and the numbness and weakness in both lower extremities. Although the March 2010 VA examiner determined there was normal range of motion of the lumbar spine and no indication of radiculopathy in the lower extremities, the Veteran has offered credible testimony that a full examination that took into account his medical history was not conducted. 

Medical evidence in the record prior to the March 2010 examination is supportive of the Veteran's claims. A March 1991 private treatment record stated that definite reduced range of motion was observed on all planes with palpable vertebral subluxations and muscle spasms. An antalgic posture was noted. A January 1993 VA examination stated the Veteran had decreased sensation in the lateral aspect of the left leg that may have indicated evidence of nerve decompression. A March 1996 VA examination reported slightly decreased sensation on the left L5 and S1 dermatomes. A November 1993 private treatment record indicated a decreased pin test on the right extremity and severe right lower extremity pain due to disc herniation and nerve compression. Although from outside the appeal period, this earlier medical evidence, in conjunction with the 2012 private treatment records detailing limited range of motion and lower extremity radiculopathy, is persuasive evidence in support of the Veteran's claims. 

The Board recognizes that the Veteran's symptomatology and complaints from February 2010 to the present are substantially similar in scope and severity. Accordingly, by resolving all doubt in the Veteran's favor, the Board finds that a 20 percent evaluation is warranted for the lumbar spine disability from February 5, 2010. Additionally, the Veteran's demonstrated radicular symptoms, as a part of his lumbar spine disability, merit an earlier effective date. Although a specific diagnosis of bilateral femoral and sciatic nerve radiculopathy is not in the record prior to the October 2015 VA examination, the lay and medical evidence indicate these were uncompensated manifestations of the lumbar spine disability at the time of the February 2010 claim for an increased rating. 

The Board has considered whether higher ratings for the lumbar spine disability or radiculopathies are warranted. 

At no point during the appeal period has there been forward flexion of the thoracolumbar spine 30 degrees or less or has favorable ankylosis of the entire thoracolumbar spine been demonstrated. The Veteran has also not had incapacitating episodes of a total duration of at least four weeks but less than six weeks during the past 12 months. Therefore, a higher rating for the lumbar spine disability is not merited. 

Additionally, at no point during the appeal period has the impairment of the Veteran's sciatic and femoral nerves been characterized as anything but mild. Although the Veteran has indicated that previously he had to drag his left leg due to pain and numbness, there is no clinical determination approximating moderate or severe incomplete paralysis. Accordingly, a higher rating for radiculopathy of the right sciatic nerve, left sciatic nerve, right femoral nerve, or left femoral nerve is not warranted.

The Board has considered whether the provisions of U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2) may indicate that the appropriate date of increase should be February 5, 2009. "The effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date." 38 U.S.C. § 5110(b)(2). The implementing regulation summarizes the criteria for an effective date of an award of increased compensation as the "[e]arliest date as of which it is factually ascertainable that an increase in disability had occurred if claim is received within one year from such date otherwise, date of receipt of claim." 38 C.F.R. § 3.400(o)(2). Thus, if a claim is received after a Veteran received treatment for a service-connected disability, but the treatment occurred within the prior one-year period and showed an increase in disability, then the effective date will be assigned as of that date of treatment. 

However, there is no evidence from February 5, 2009, to February 5, 2010, of a factually ascertainable increase in disability. Instead, the Board has taken into account the entirety of the Veteran's medical history in determining that his disabilities most closely approximate the ratings applied herein and has given the Veteran the benefit of the doubt that the appropriate effective date be the date of claim for increase. As such, an earlier effective date than February 5, 2010, for the claims on appeal is not merited.


ORDER

A rating of 20 percent, but no higher, for lumbar spine disability from February 5, 2010, is granted. 

A rating of 10 percent, but no higher, for radiculopathy of the right leg sciatic nerve from February 5, 2010, is granted. 

A rating of 10 percent, but no higher, for residual of motor and sensory deficits of the left leg sciatic nerve from February 5, 2010, is granted

A rating of 10 percent, but no higher, for radiculopathy of the right leg femoral nerve from February 5, 2010, is granted.

A rating of 10 percent, but no higher, for radiculopathy of the left leg femoral nerve from February 5, 2010, is granted. 




____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals




Department of Veterans Affairs