﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190528-6936
DATE: March 31, 2020

ORDER

Entitlement to an acquired psychiatric disorder to include posttraumatic stress disorder (PTSD), panic disorder, and generalized anxiety disorder, is granted.

FINDING OF FACT

There is an approximate balance in positive and negative evidence to show the Veteran’s acquired psychiatric disorder to include PTSD, panic disorder, and generalized anxiety disorder is related to the Veteran’s active duty service.

CONCLUSION OF LAW

The criteria for service connection for an acquired psychiatric disorder to include PTSD, panic disorder, and generalized anxiety disorder, have been met. 38 U.S.C. §§ 1110, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served in active duty service with the Army from April 1990 to May 1993 to also include service with the Army Reserve.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA).

The Veteran timely appealed the April 2019 rating decision by submitting a VA form 10182 in May 2019 and requesting the Evidence Submission Lane. Accordingly, the Board will consider the evidence of record as of the date of the April 2019 decision and evidence submitted within 90 days of the May 2019 VA form 10182 submission.

The Board notes that the April 2019 rating decision indicated a favorable finding that the Veteran has a current diagnosed disability for PTSD. As such, the Board is bound by this favorable finding.

The Board notes that a claim for a disability includes any disability that may reasonably be encompassed by the claimant’s description of the claim, reported symptoms, and the other information of record. See Clemons v. Shinseki, 23 Vet. App. 1, 5-6 (2009). 

The Veteran filed a claim in July 2018 for PTSD. Review of the Veteran’s medical treatment record shows treatment and diagnoses for panic disorder, alcohol use disorder, and generalized anxiety disorder. September 2018 VA examiner diagnosed the Veteran with PTSD and moderate alcohol use disorder in partial remission.

Considering the Veteran’s claims and description of his symptomology, and examinations of the issues, the Board will recharacterize the claim as to consider whether the Veteran is entitled to service connection for an acquired psychiatric disorder to include PTSD, panic disorder, and generalized anxiety disorder.

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection for PTSD requires medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125 (a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304 (f). When the evidence does not establish that a Veteran is a combat Veteran, the assertions of service stressors are not sufficient to establish the occurrence of such events. Rather, the reported service stressors must be established by official service record or other credible supporting evidence. 38 C.F.R. § 3.304 (f); Pentecost v. Principi, 16 Vet. App. 124 (2002).

If a stressor claimed by a veteran is related to that claimant’s fear of hostile military or terrorist activity and a VA psychiatrist or psychologist, or a psychiatrist or psychologist with whom VA has contracted, confirms that the claimed stressor is adequate to support a diagnosis of PTSD and that the veteran’s symptoms are related to the claimed stressor, in the absence of clear and convincing evidence to the contrary, and provided the claimed stressor is consistent with the places, types, and circumstances of the claimant’s service, a veteran’s lay testimony alone may establish the occurrence of the claimed in-service stressor. For purposes of this paragraph, “fear of hostile military or terrorist activity” means that a claimant experienced, witnessed, or was confronted with an event or circumstance that involved actual or threatened death or serious injury, or a threat to the physical integrity of the veteran or others, such as from an actual or potential improvised explosive device; vehicle-imbedded explosive device; incoming artillery, rocket, or mortar fire; grenade; small arms fire, including suspected sniper fire; or attack upon friendly military aircraft, and the claimant’s response to the event or circumstance involved a psychological or psycho-physiological state of fear, helplessness, or horror. 38 C.F.R. § 3.304 (f)(3).

The Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive and provide the reasons for its rejection of any material evidence favorable to the claimant. See Wensch v. Principi, 15 Vet. App. 362, 367 (2001). Board determinations with respect to the weight and credibility of evidence are factual determinations going to the probative value of the evidence. Layno v. Brown, 6 Vet. App. 465, 469 (1994).

In relevant part, 38 U.S.C. § 1154 (a) requires that the VA give “due consideration” to “all pertinent medical and lay evidence” in evaluating a claim to disability. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional.” Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In fact, competent medical evidence is not necessarily required when the determinative issue involves either medical etiology or a medical diagnosis. Id. at 1376-77; see also Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. 38 U.S.C. § 5107(b); see Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 C.F.R. § 3.102. The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996).

Acquired psychiatric disorder

The Veteran contends that his acquired psychiatric disorder is related to his active duty service.

As addressed above, the April 2019 rating decision found a favorable finding in that the Veteran had a current diagnosed disability for PTSD. Review of the medical treatment record shows diagnoses and treatment for panic disorder, alcohol use disorder and generalized anxiety disorder; and at the September 2018 VA examination the examiner diagnosed the Veteran with PTSD and alcohol use disorder in partial remission. As such, the Board finds the Veteran with a current disability.

Review of the Veteran’s service treatment records (STRs) do not show complaints, treatments or diagnoses for a psychiatric disorder. Both the Veteran’s February 1990 enlistment and December 1992 separation examination did not report any mental or psychiatric issues.

Review of the Veteran’s medical treatment record shows in February 2010 the Veteran was seen for complaints for anxiety and stress due to a divorce but stated that he was completely fine.

In April 2010 the Veteran reported a hospitalization in February 2010 for chest pain and shortness of breath attributed to an anxiety or panic attack. The Veteran denied exposure to combat or toxins from his service. The Veteran reported having 3 to 4 drinks of alcohol two to three times a week with 6 or more drinks on a weekly basis.

In May 2010 the Veteran stated that his panic attacks began two years ago when his now ex-wife served him divorce papers and left him because of the economy going bad. The treating psychiatrist diagnosed the Veteran with panic disorder without agoraphobia, generalized anxiety disorder, and alcohol use disorder. The Veteran noted that he had been self-medicating with alcohol and reported drinking a six pack daily; however, the Veteran indicated that he was “not ready to quit.”

In October 2010 the Veteran reported drinking four beers with friends after work and agreed to decrease and stoop drinking in order to improve his functioning. In November and December 2010, the Veteran was noted to be able to reduce his alcohol intake significantly and reported that he was less anxious and no panic attacks. In January 2011 the Veteran stated that he was willing to cut down on drinking but reported that he still has three beers a day.

In regular mental health notes from December 2011 to March 2016 the Veteran reported varying levels of anxiety with occasional panic attacks and that he was able to maintain reducing his alcohol intake. Throughout his visits, the treating psychiatrist gave the Veteran diagnoses of panic disorder, general anxiety disorder and alcohol abuse disorder.

In an April 2015 alcohol screening test, the Veteran reported drinking five to seek drinks containing alcohol on four or more times a week; the Veteran also reported having six or more drinks daily or almost daily.

In a January 2018 mental health case manager note, the Veteran reported that he came in monthly to address “symptoms of anxiety from his PTSD”, however the case manager noted that the Veteran’s diagnoses include panic disorder, general anxiety disorder, and moderate alcohol use disorder but not a diagnosis for PTSD.

In a July 2018 psychiatry note, the Veteran reported improved anxiety and drinks a couple of six packs of beer twice a week. The Veteran reported feeling better in general and “no longer worries about everything.”

In a submitted July 2018 statement, the Veteran stated that his limitations were a direct result from PTSD, and he has been suffering from PTSD since his separation from service with symptoms of night sweats, panic attacks, sleep deprivation and difficulty with large groups and closed doors. The Veteran stated that he cannot leave his house for work without taking his medication.

The Veteran reported a number of stressors and causes of his claimed psychiatric disorder to include Light infantry training, monthly CS gas chamber training, and duties as part of a Deployment Ready Force (DRF). The Veteran stated as part of the DRF, he was sent on multiple deployments including “the flight to Haiti when the president was kidnapped, deployment to Panama after the invasion, and deployment to the LA riots in 1992.”

The Veteran stated that he trained with Rangers and 10th Special Forces which he described as having a toll on his mental health. The Veteran reported that he saw a fellow soldier “hanging outside his barracks window … committed suicide due to the hardships we had to endure.” The Veteran also reported serving in the first Iraq War.

The Veteran was afforded a September 2018 VA examination. The VA examiner gave the Veteran diagnoses of PTSD and moderate alcohol use disorder in partial remission.

The Veteran reported no family psychiatric history. The Veteran dates his psychiatric treatment from 2008 when he stated that he felt that his temper started getting the best of him. The Veteran reported that he was married in 2003 but it only lasted 5 years; the Veteran blames himself because “he was so anxious and displayed recurrent violent emotional outbursts.” The Veteran stated that he never assaulted his spouse but recalled punching holes in walls. The Veteran stated that he later dated a woman, but that relationship lasted only 6 months. The Veteran stated that he currently lives alone with few friends and no social life. The Veteran stated that he has worked as a tool and die maker for the past 27 years and needs to take medication for anxiety daily before leaving for work.

The Veteran reported that he was not a heavy drinker, however the examiner noted the Veteran’s medical treatment record show diagnoses for alcohol abuse disorder and records where the Veteran reported a history of drinking ranging from 3 to 4 drinks two or three times a week to as much as six or more drinks on a daily or almost daily basis.

The Veteran reported that while in active duty service he completed training to become a light infantry leader and served various deployments as a member of a Deployment Ready Force (DRF) assigned to South America. The Veteran described that the DRF was a “continuous on-call assignment” that resulted in frequent call ins for preparedness drills. The Veteran stated that he was deployed to Los Angeles following the shooting of Rodney King, in Panama following the “downfall of Noriega” and to Haiti during a period of political unrest. 

The Veteran reported several stressors events. The Veteran first reported a stressor event where he got into an “angry encounter with another soldier who tried to touch him in a sexual manner” and broke the soldier’s fingers. The Veteran stated that he has never disclosed this incident to anyone, not even his doctor. The Veteran recalled the incident as disturbing at the time and wondered what would lead someone to make a pass at a fellow soldier.

The examiner found this stressor adequate to support a diagnosis for PTSD and related to an in-service personal assault such as military sexual trauma (MST). The examiner noted the Veteran reported that he became more reclusive afterwards and has a history of substance abuse and divorce.

The Veteran next reported a stressor event where his unit was deployed to the streets of Los Angeles during the riots following the shooting of Rodney King. The Veteran recalled this period as the “worst several weeks of his life” and described sleep deprivation, being followed by gangs while on patrol and fearing for his life. The examiner found this stressor adequate to support a diagnosis for PTSD and related to the Veteran’s fear of hostile military or terrorist activity.

The Veteran then reported a stressor event where upon returning to his barracks early one more he found a fellow soldier hanging by a bedsheet outside a window. The Veteran described feeling paralyzed and unable to move and stated that he vividly recalled the surreal appearance of the body in the mist. The Veteran stated that he remembers that the soldier’s body was not cut down and instead hauled back through the window by the bedsheet.

The examiner found this stressor adequate to support a diagnosis for PTSD but no related to the Veteran’s fear of hostile military or terrorist activity, stating “the incident reflects observing a comrade’s reaction to stress, but not a hostile engagement with an enemy.”

The examiner found that all three reported stressor events contributed to the Veteran’s diagnosis for PTSD. 

The examiner noted that the evidence of record showed some inconsistencies, finding: 

“The available documentation contains no indication that the Veteran ever disclosed to his treating providers the stressors he identified at today’s [examination]. Yet he also failed to disclose pertinent information in today’s [examination] that he previously related to his treatment providers.”

The examiner pointed to one such inconsistency where review of the record indicated the Veteran appeared to have omitted a possible history of alcohol misuse; however, the examiner found based upon the Veteran’s overall presentation and history, “these lapses are better attributed to shame rather than intentional deception.” The examiner found that review of both the medical treatment record and examination findings were sufficient to support a diagnosis for PTSD.

The examiner found the Veteran’s PTSD less likely as not caused by or the result of his active duty service. The examiner noted that there was no reported family psychiatric history and no reported psychiatric disturbance prior to the Veteran’s entrance into service. The examiner found:

“Although never deployed to an area of declared combat, the Veteran has a history of exposure to conflict that posed threats essentially equivalent of those of combat. The records contained ample documentation of anxiety symptoms that are consistent with both anxiety disorders and PTSD.”

As such, the examiner opined the Veteran’s PTSD is at least as likely as not caused by or the result of his active duty service.

In an April 2019 Joint Service Records Research Center (JSSRC) report, the JSSRC coordinated with the US Army Center for Military History in reviewing historical documents and unit records the Veteran was assigned to. After review, the JSSRC was unable to locate any unit records from January through December 1992 and unable to find documentation or record that the Veteran or the unit he was assigned to was deployed to the Los Angeles riot after the Rodney King riots.

After the Veteran’s submitted May 2019 10182 VA form selecting the Evidence Submission option, the Veteran and his representative in August 2019 submitted a brief with attached photographs to show the Veteran and his unit were deployed to Los Angeles during the riots.

The Board acknowledges the Veteran’ submitted lay statements about symptoms regarding his psychiatric disorder. The Veteran is considered competent and credible in hist statements. However, as lay persons, the Veteran does not have the training or expertise to render a competent opinion, as this is a medical determination that is complex. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007).

Considering the competent and credible evidence of record, including the medical treatment records and VA examination opinion, the Board finds the evidence is at least in equipoise. The Veteran has a current diagnosis for a psychiatric disorder to include PTSD, panic disorder and generalized anxiety disorder.

Although the Veteran’s STRs do not show record of complaints or treatment for a psychiatric condition, the Veteran has competently and credibly reported symptoms of anxiety and in fear of his life during his active duty service. The Veteran also reported being affected by a reported sexual trauma incident from a fellow soldier.

Review of the record does not show evidence that contradicts the Veteran’s lay assertions. Although the JSRRC was unable to confirm the Veteran’s deployment to Los Angeles during the Rodney King riots, the September 2018 VA examiner opined the Veteran was placed or exposed in situations that were akin to combat like conditions. Therefore, resolving reasonable doubt in the Veteran’s favor, the Veteran also had an inservice occurrence related to or resulting in a psychiatric disorder.

The record also reflects the presence of “markers” pointing to a personal assault in service, including, for example, the Veteran’s divorce due to anxiety and recurrent violent outbursts, later unsuccessful romantic relationship, and documented alcohol abuse and use disorder. The September 2018 VA examiner found the Veteran’s diagnosed psychiatric disorder related to his active duty service.

As such, the benefit of the doubt is resolved in the Veteran’s favor and the Board finds that the Veteran’s psychiatric disorder to include PTSD, panic disorder and generalized anxiety disorder is related to his active duty service.

Accordingly, a grant of service connection is warranted.

 

 

MICHAEL LANE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Yang, Attorney-Advisor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.